## COMMONWEALTH *VS.* ANGELINA SALYER.

No. 12-P-128.

Middlesex. November 15, 2012. - October 4, 2013.

Present: TRAINOR, AGNES, & SULLIVAN, JJ.

*Criminal Harassment. Practice, Criminal,* False report, Motion in limine, Required finding, Assistance of counsel. *Evidence,* Relevancy and materiality, Privileged communication, Admitted de bene, Authentication of document. *Constitutional Law,* Assistance of counsel. *Due Process of Law,* Assistance of counsel. *Husband and Wife. Privileged Communication.*

At the trial of a criminal complaint charging, inter alia, making a false report of a crime, the defendant suffered no prejudice as a result of counsel's failure to move for a required finding of not guilty on that charge, where, based on the direct evidence of the defendant's false report of a crime to the police and statements she made to the police in reporting the crime, evidence that she had a motive to harm the victim's reputation in order to improve her own position in the child custody dispute between herself and the victim, and the circumstantial evidence permitting a reasonable and possible inference that she falsified certain electronic mail messages, the jury were warranted in concluding beyond a reasonable doubt that the defendant acted with the requisite intent and knowledge. [351-353]

At the trial of a criminal complaint charging, inter alia, criminal harassment, counsel's failure to object to the admission of evidence subject to the marital disqualification, i.e., testimony by the defendant's spouse as to the contents of private conversations with the defendant, constituted ineffective assistance [353-355]; further, counsel's failure to move to strike certain evidence, i.e., messages alleged to have been sent on the social networking Web site MySpace, that had been admitted de bene constituted ineffective assistance, in that the evidence, which supplied an essential element in the Commonwealth's case, required the Commonwealth to establish its authenticity in order to meet the threshold test of relevancy; and in that a foundation was never established linking the evidence to the defendant. [355-356]

COMPLAINT received and sworn to in the Ayer Division of the District Court Department on October 27, 2009.

The case was tried before *Peter J. Kilmartin,* J.

*Barbara Munro* for the defendant.

*Anne Pogue Donohue*, Assistant District Attorney, for the Commonwealth.

AGNES, J. Following a trial by jury, the defendant, Angelina Salyer, was found guilty of making a false report of a crime in violation of G. L. c. 269, § 13A, and criminal harassment in violation of G. L. c. 265, § 43A(*a*). We conclude that because her attorney provided ineffective assistance of counsel in failing to object and move to strike certain inadmissible evidence, there must be a new trial on the charge of criminal harassment.

*Background.* The jury could have found that beginning in 2001, the defendant and Richard Dicato were involved in a relationship and had two children together. At the end of their relationship, a dispute arose over custody of the children. A bitterly contested custody case ensued in the Probate Court and was ongoing in the fall of 2008. At some point in 2007, the defendant married Jeffrey Salyer (Jeffrey). During 2008, Jeffrey and the defendant lived in a home on Mason Road in Townsend. They remained married to each other at the time of the trial in the present case. Jeffrey frequently served as a babysitter for the defendant's two children. In the fall of 2008, the defendant's daughter accused Jeffrey of molesting her. Although the allegations were not supported and Jeffrey was promptly cleared, the Probate Court changed the schedule for the defendant's visits with her children, who were living with Dicato. Prior to the accusations against Jeffrey, the defendant had had the right to unsupervised visits with her children twice a week, including whole weekends; after the allegations, she was only permitted to visit with her children one day per week, the visits had to be supervised, and Jeffrey could not be present.

1. *Evidence related to the false report of a crime charge.* On the evening of Saturday, November 22, 2008, the defendant and her mother went to the Townsend police department. The defendant told Officer Kimberly Mattson that she had received a threatening electronic mail message (e-mail) that day from her former boyfriend, Dicato. She gave Officer Mattson a printout of the e-mail message and signed a statement. She told Officer Mattson that she was in fear for her safety. This alleged e-mail, which was admitted in evidence at trial, is from a Yahoo! e-mail

address: "rd1977@yahoo.com" (hereafter, rd1977).[1] In her statement, the defendant told the police that she knew that the e-mail was from Dicato because "[t]his is his normal e-mail we have used for years." However, Dicato testified that for more than ten years he had used a different Yahoo! e-mail address, namely, "rd1977us@yahoo.com" (hereafter, rd1977us). He told the jury that he had never used the address rd1977 and did not send the threatening e-mail. A business record from Yahoo! relating to e-mail address rd1977us was received in evidence without objection. This record indicated that e-mail address rd1977us was registered by "Mr. Richard Dicato" (including a specific residential address in Fitchburg), correctly identified his tattoo business ("Flesh by Design") and the business address, included home and business telephone numbers, and was accompanied by Internet log-in activity for that e-mail address from August 1, 2008, through November 26, 2008, as well as from June 9, 2009, to June 7, 2010. The Commonwealth also offered a Yahoo! business record for the e-mail address (rd1977) on the printout provided to Officer Mattson by the defendant and alleged by her to be from Dicato. This e-mail address was registered by an individual in Crawfordsville, Indiana, who has no apparent connection to this case. This record also indicates that no one has ever logged in to the Internet using this address.

---

[1]The header information of the e-mail allegedly sent by Dicato to the defendant reads as follows: "From: Richard Dicato <rd1977@yahoo.com> To: bisnonna2000@yahoo.com Sent: Saturday, November 22, 2008 12:24:11 PM Subject: Hi." It states "I" (allegedly Dicato) "will bury you and Jeff" and destroy Jeff's career and the defendant's marriage, and says further that the sender has the power to make the defendant "disappear" and that her days are "numbered." This e-mail message appears to be a response to an e-mail sent by the defendant to Dicato several years earlier which appears on the same printed page. The header information in the earlier e-mail message reads as follows: "From: Angelina Salyer <bisnonna2000@yahoo.com> To: rd1977@yahoo.com Sent: Saturday, August 30,2004 2:11:17 PM Subject: Hi." The earlier e-mail is principally a complaint about Dicato's refusal to agree to joint custody and Dicato's allegedly false accusation that Jeffrey had slapped their daughter. It closes with this statement: "If you continue on this path of obvious destruction, I will be forced to fight for custody, because you are no longer doing the right thing for my children." The defendant's mother testified that the defendant forwarded the e-mail allegedly sent by Dicato to Dicato's lawyer in the custody case, which is confirmed by the entries appearing on the top of the page of what was marked as an exhibit at trial. Dicato testified that a copy of this e-mail was forwarded to him by his attorney.

2. *Evidence related to the criminal harassment charge.* Dicato testified that he has owned a tattoo business known as "Flesh by Design" since 2007. He had a "page" on the social networking (or "social media"[2]) Web site MySpace for his business. In October, 2008, shortly after the allegations of child abuse against Jeffrey surfaced and during the time the defendant and Dicato were engaged in the custody dispute in the Probate Court, Dicato received a message through a different MySpace page purporting to be the MySpace page for his business and titled "Flesh by Design is dirty." The message alleged that his business did poor tattoo work and stated that if Dicato were ever seen again, "they [unspecified] would either beat [him] up or kill [him]." Dicato called the police after he received this communication. An investigation followed. The police questioned the defendant, who denied any involvement. This threatening MySpace message was not itself offered as an exhibit and is not part of the record. Over repeated objections, Dicato and Townsend police Detective Gilbert testified extensively about the contents of this message. In particular, Detective Gilbert testified that based on information contained in this threatening MySpace message, records were subpoenaed from MySpace. These records contained an identification (ID) number that the police were able to "trace, and it came back that it was a Comcast [Internet service provider] account . . . ." The MySpace record was admitted in evidence over the defendant's objection. It refers to a user ID number (422885246) associated with an account in the name of "John" (first name) and "John" (last name) with a Fitchburg address, a particular Internet Protocol (IP) address,[3] and an e-mail address of "tattoo_freak78@yahoo. com." From Detective Gilbert's testimony the jury could infer that this MySpace record was a link in a chain of evidence tying the threatening MySpace message received by Dicato to the

---

[2]The New Oxford American Dictionary 1658 (3d ed. 2010) defines "social media" as "websites and applications used for social networking." See also Vinson, The Blurred Boundaries of Social Networking in the Legal Field: Just "Face" It, 41 U. Memphis L. Rev. 355 (2010) (overview of the legal issues that arise in connection with the use of social media).

[3]An IP address has been defined as a "unique numerical address identifying each computer on the internet." *In re Application of the United States for Order Authorizing Use of Pen Register and Trap on Internet Service Account/ User*, 396 F. Supp. 2d 45, 48 (D. Mass. 2005).

defendant.[4] Defense counsel moved to exclude the MySpace record on the ground that the Commonwealth failed to link the threatening MySpace page to the defendant. The court ruled that the Commonwealth should have the opportunity to supply the missing foundation evidence through the testimony of later witnesses. There is no documentary evidence in this case that links this user ID number (422885246) to the defendant.

The jury also heard that later in October, some clients notified Dicato of messages on MySpace from alleged customers of his business on what appeared to be a facsimile of Dicato's "Flesh by Design" page. He testified that in all he found seventeen pages of these MySpace messages that were disparaging of him and his tattoo business. Dicato printed them and showed them to the police. As he had never received a complaint from a customer and in view of the ongoing custody case, he felt "weird," experienced stress, and could not sleep. At trial, he produced nine of these MySpace messages consisting of a total of twelve sheets each appearing to have originated from a different IP address.

The defense filed a pretrial motion in limine to exclude this evidence and objected when it was offered at trial. The judge admitted the twelve pages of disparaging MySpace pages and messages in evidence de bene based on the Commonwealth's representation that the testimony of Jeffrey would provide the missing link connecting this evidence to the defendant.[5]

In his testimony, Jeffrey, the defendant's husband, denied

---

[4]The judge sustained an objection to Detective Gilbert's testimony that the account was opened from an IP address that was linked to the Salyers' home. Although no records relating to any Comcast accounts were offered by the Commonwealth, the court, over objection, admitted a business record from MySpace which, the jury could infer from Detective Gilbert's testimony, led him to establish a link between the defendant and the threatening MySpace message sent to Dicato. Detective Gilbert's testimony on this point is difficult to follow because it is interrupted in the transcript by several unintelligible or incompletely recorded sidebar conferences. It appears that, based on a value he identified as a user ID (422885246) appearing on both a MySpace account and a Comcast account, he concluded that the threatening MySpace message received by Dicato originated from a computer with an IP address that could be traced to a home on Mason Road in Townsend.

[5]Dicato read aloud for the jury portions of these messages. Among other things, these communications alleged that DiCato charged excessive fees, that he had caused one customer to contract an infection, that he had inappropriately

responsibility for any of the MySpace messages concerning Dicato or his business and the threatening e-mail allegedly sent to the defendant.[6] Jeffrey also testified, without objection, to several private conversations he had had with the defendant. On one occasion, the defendant told Jeffrey she planned to ruin Dicato and obtain custody of their children. Jeffrey testified also that, on another occasion, the defendant called him at work and told him she had just returned from "child court" and needed to use his debit card. When asked for a reason, she told him Dicato's lawyer told her "they were going to press charges against her for the MySpace accounts." She added that someone in the information technology department at work told her that there was software she could buy that would "delete IP addresses or do something to your IP addresses."

During the investigation, Townsend police Officer Girard asked Jeffrey to examine the home computer "to try [to] find anything and everything" that he could and "try to get it to [Officer Girard] as evidence." Jeffrey testified that the defendant had a "list of stuff" on their desk which had "all different names, all different e-mail addresses, and stuff like that," and he did not know what she was doing with it. In particular, when he asked her about this list, she said she was using these things to make fun of Dicato's business and to ruin him so she could gain custody of the children. Jeffrey also testified that he deleted some things on their home computer because it was "going slow." Later, he testified, when the defendant was using the computer and learned what he had done, she became upset and told him that he had deleted the software she had downloaded to use so "no one can identify your IP address. It automatically changes."

*Discussion.* 1. *False report charge.* With regard to the false report charge, the Commonwealth had to prove that (1) the defendant reported a crime to the police; (2) the report was false; (3) the defendant intended to make the false report to a police officer; and (4) the defendant knew the report she was

---

touched a female customer's breasts, that he had been distracted at work by the presence of his children who had been allowed to run amok, and that he had damaged a customer's ear.

[6]Jeffrey disclosed to the jury his e-mail address, which is unrelated to any of the e-mail addresses in evidence in this case.

making was false. Criminal Model Jury Instructions for Use in the District Court § 7.260 (2009). See also *Commonwealth* v. *Fortuna*, 80 Mass. App. Ct. 45, 52-53 (2011). Relying on *Commonwealth* v. *Wright*, 60 Mass. App. Ct. 108, 112 (2003), the defendant contends that, although there was ample evidence that her report of a crime to the police[7] was false, the evidence that she acted knowingly and intentionally is lacking. She asserts that her attorney's failure to move for a required finding of not guilty on this charge constitutes ineffective assistance of counsel and that her conviction on this charge must be reversed.[8]

In *Wright, supra*, which involved the charge of posing a child under the age of eighteen in a state of nudity, knowing the child to be under eighteen, we explained that the jury could not, simply by choosing to disbelieve the defendant's testimony that the victim was eighteen years of age, conclude beyond a reasonable doubt that the defendant knew or should have known that the victim was under the age of eighteen. Here, in contrast, the jury were warranted in inferring that the defendant acted knowingly and intentionally, based on several affirmative representations she made to the police about the e-mail address she attributed to Dicato on the printout she delivered to the police and other circumstantial evidence. First, she told the police that the e-mail address in question was Dicato's "normal e-mail we have used for years." Based on Dicato's testimony and the Yahoo! records in evidence, the jury would have been warranted in concluding that this statement was false. Second, she

---

[7]The evidence turned over to the Townsend police by the defendant and which was admitted in evidence at trial consisted of three allegedly linked messages. In chronological order, the first message was a 2004 e-mail allegedly sent by the defendant to Dicato at Yahoo address rd1977. The second message was the threatening e-mail allegedly sent by Dicato in reply to the defendant. The third message was an e-mail from the defendant forwarding the two prior e-mails to Dicato's lawyer.

[8]Ordinarily, a claim of ineffective assistance of counsel raised for the first time on appeal will be rejected in favor of a motion for a new trial because otherwise the appellate court lacks the benefit of trial counsel's explanation for the challenged conduct or omission. See *Commonwealth* v. *Taylor*, 463 Mass. 857, 869 (2012). When, as here, such a claim is raised on direct appeal, "we will reverse the defendant's convictions only if the ineffectiveness 'appears indisputably on the trial record.'" *Commonwealth* v. *Medeiros*, 456 Mass. 52, 61 (2010), quoting from *Commonwealth* v. *Zinser*, 446 Mass. 807, 811 (2006).

not only gave the police a copy of an e-mail she had allegedly received from Dicato, but also gave them a second e-mail message, printed on the page, allegedly from her to Dicato several years earlier. Based on this evidence, the jury would have been warranted in inferring that (1) the second e-mail dated August 30, 2004, also was false (it was addressed to rd1977 versus rd1977us), (2) the first e-mail, dated November 22, 2008, and allegedly from rd1977, likewise was false because the defendant represented it as a reply by Dicato to her earlier, 2004 e-mail to him, and (3) the defendant knew these e-mails were false based on her statement that she knew Dicato's e-mail address which "we have used for years." See note 1, *supra*. Based on (1) the direct evidence of the defendant's false report of a crime to the police and the statements she made to the police in reporting the crime, (2) evidence that she had a motive to harm Dicato's reputation in order to improve her position in their custody dispute, and the (3) circumstantial evidence permitting a reasonable and possible inference that she falsified the 2008 e-mail allegedly sent to her by Dicato as well as the 2004 e-mail she allegedly sent to him, the jury were warranted in concluding beyond a reasonable doubt that the defendant acted with the requisite intent and knowledge. See *Commonwealth* v. *Kingsbury*, 378 Mass. 751, 754 (1979) ("[A] jury may use their general knowledge in determining what inferences may be drawn to establish a material fact not proved by direct evidence . . ."). See also *Commonwealth* v. *Gallison*, 383 Mass. 659, 667 (1981); *Commonwealth* v. *Henault*, 54 Mass. App. Ct. 8, 11-13 & n.6 (2002). In sum, the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to permit a rational fact finder to find the essential elements of the crime beyond a reasonable doubt. Thus, the defendant suffered no prejudice as a result of trial counsel's failure to move for a required finding of not guilty on the charge of making a false report of a crime. See *Commonwealth* v. *Servidori*, 6 Mass. App. Ct. 969 (1979).

2. *The criminal harassment charge.* The defendant argues that defense counsel provided ineffective assistance at trial in failing to object to evidence subject to the marital disqualification, failing to move to strike certain evidence from the record,

failing to object to evidence that violated the best evidence rule, and failing to file a motion for a required finding of not guilty. She argues that the evidence was insufficient to support the conviction of criminal harassment, contending that the Commonwealth failed to link the MySpace pages to the defendant and failed to prove each element of the crime beyond a reasonable doubt.

Criminal harassment in violation of G. L. c. 265, § 43A(*a*), requires the Commonwealth to prove that (1) the defendant committed not less than three separate acts of wilful and malicious conduct directed at the victim, (2) the victim was seriously alarmed by the conduct, and (3) a reasonable person would have suffered substantial emotional distress as a result of this conduct. See *Commonwealth* v. *O'Neil*, 67 Mass. App. Ct. 284, 290 (2006). The evidence relied upon by the Commonwealth to prove the criminal harassment charge consisted principally of (1) statements reportedly made by the defendant to Jeffrey that, with the aid of specialized software that could automatically change a computer's IP address, she was using MySpace to harm or make fun of Dicato and his business; (2) the threatening MySpace message and the twelve pages of false MySpace messages that appeared on the facsimile of Dicato's MySpace page; and (3) testimony of Detective Gilbert and Officer Girard about the contents of records not in evidence, which provided a link between a home on the street where the defendant resided and the false MySpace messages. Timely objections or a motion to strike would have resulted in the exclusion of this evidence.

a. *Counsel's failure to object to evidence subject to the marital disqualification.* In both civil and criminal cases, "a witness shall not testify as to private conversations with a spouse occurring during their marriage." Mass.G.Evid. § 504(b)(1) (2013). Because the defendant and Jeffrey were married at the time of trial and the evidence indicates that the conversations that Jeffrey related he had had with her about obtaining software to change her IP address and about her plan to harm Dicato were private, a timely objection would have resulted in a ruling excluding these highly incriminating statements. See *Gallagher* v. *Goldstein*, 402 Mass. 457, 459 (1988) ("The contents of private conversations are absolutely excluded"; "[t]estimony as to the

contents of a private conversation is inadmissible even if both spouses desire the evidence to be admitted"); *Commonwealth* v. *Gillette,* 33 Mass. App. Ct. 427, 430 (1992) (if there had been objection to private conversation between persons who at time were married, judge would have been required to sustain it). As there was no objection, the testimony was "admitted for its full probative value." *Commonwealth* v. *Sylvia,* 35 Mass. App. Ct. 310, 315-316 (1993) (citations omitted).

Although defense counsel's theory that Jeffrey, not the defendant, committed the crimes may have been a sound strategy, it did not compel the admission of these private conversations. In her cross-examination of Jeffrey, defense counsel made no use of this evidence. In fact, the admission of these conversations did considerable damage to her defense. The conversations related by Jeffrey reinforced that the defendant had a motive to harm Dicato and established that she had the means and the opportunity to commit the crimes. The failure to object to this evidence was not the result of any plausible and reasonable trial strategy, was manifestly unreasonable, and was substantially below the level of adequate representation expected of reasonably competent counsel. See *Commonwealth* v. *Gillette,* 33 Mass. App. Ct. 427, 432 (1992). See also *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978).

b. *The MySpace pages and other evidence.* As noted earlier, the twelve pages of MySpace messages which Dicato testified that he had discovered on a facsimile of his business's MySpace page were admitted de bene based on the Commonwealth's representation that the missing foundation would be supplied later in the case. See *Harris-Lewis* v. *Mudge,* 60 Mass. App. Ct. 480, 485 (2004) (relevant evidence may be received de bene, subject to a later motion to strike if the necessary foundation or requirement is not supplied).

Evidence admitted de bene remains in the case and is available to the jury for its full probative value unless opposing counsel moves to strike it from the record. See *Commonwealth* v. *Sheppard,* 313 Mass. 590, 595-596 (1943). The court has no duty to strike de bene evidence on its own motion even though the necessary foundation evidence promised by the proponent is not forthcoming. See *ibid.* The duty to strike such evidence

rests with the party that objected to its admission. *Ibid.* The objecting party's failure to move to strike the evidence "gives them no ground upon which to support their earlier objection." *Commonwealth* v. *Johnson,* 199 Mass. 55, 59 (1908). Although defense counsel objected when the MySpace pages were first offered into evidence, counsel did not thereafter move to strike this evidence from the record. See *Commonwealth* v. *Navarro,* 39 Mass. App. Ct. 161, 166 (1995) (where defendant failed to move to strike evidence admitted de bene, review on appeal limited to review for substantial risk of miscarriage of justice).

Even if we assume that there was no dispute that the MySpace messages were false and had been fabricated, in order for them to meet the threshold test of relevancy, see Mass.G.Evid. § 401 (2013), the Commonwealth had to satisfy the judge that they were authentic, which in these circumstances meant that they were created by or at the direction of the defendant. See Mass.G.Evid. § 901(a) (2013) ("The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims").[9] This evidence supplied an essential element in the Commonwealth's case on the charge of criminal harassment. The failure to move to strike this evidence was not the result of any plausible and reasonable trial strategy, was manifestly unreasonable, and was substantially below the level of adequate representation expected of reasonably competent counsel.

In addition, the threatening MySpace message which Dicato said he had received and which he and Detective Gilbert described in detail despite repeated objections was never linked to the defendant. Without a foundation linking this evidence to the defendant, it was not relevant and the testimony should have been excluded. See Mass.G.Evid. §§ 401, 402 (2013).[10]

---

[9]If Jeffrey's testimony were not subject to exclusion due to the marital disqualification, the judge would have been warranted in relying on it to supply the "confirming circumstances" necessary to authenticate the twelve pages of MySpace messages as having originated with the defendant. See *Commonwealth* v. *Purdy,* 459 Mass. 442, 450 (2011). Contrast *Commonwealth* v. *Williams,* 456 Mass. 857, 868-869 (2010) (inadequate foundation linking MySpace page to defendant or his brother).

[10]The defendant is also correct in her assertion that the testimony, objected

*Conclusion.* To prevail on a claim of ineffective assistance of counsel, the defendant must establish (1) that counsel's performance exhibited "serious incompetency, inefficiency, or inattention . . . falling measurably below that which might be expected from an ordinary fallible lawyer," *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), and (2) that counsel's failings materially affected the outcome of the trial or "likely deprived the defendant of an otherwise available, substantial ground of defence." *Ibid. Commonwealth* v. *Fanelli,* 412 Mass. 497, 503 (1992). *Commonwealth* v. *Scullin,* 44 Mass. App. Ct. 9, 11 (1997). Without the evidence admitted in violation of the marital disqualification, there was insufficient evidence of a link between the disparaging MySpace pages and the defendant. Absent such a link, the MySpace pages and the testimony about them were not admissible. This evidence was essential to the proof of the criminal harassment charge. Although defense counsel made a number of timely and appropriate objections, her failure to object to the admission of her client's statements served no strategic purpose and cannot be said not to have affected the jury's verdict on the criminal harassment charge. This omission and other failures by defense counsel met the two-part test for ineffective assistance of counsel with respect to the criminal harassment charge. See *Commonwealth* v. *Gillette,* 33 Mass. App. Ct. 427, 429-432 (1992); *Commonwealth* v. *Scullin,* 44 Mass. App. Ct. at 11-14.

In sum, as noted above, the evidence properly admitted on the false report charge was sufficient to withstand a motion for

to by defendant counsel, about the contents of records that were not in evidence was hearsay and violated the best evidence rule. See Mass.G.Evid. § 1002 (2013). "The best evidence rule provides that, where the contents of a document are to be proved, the party must either produce the original or show a sufficient excuse for its nonproduction." *Commonwealth* v. *Ocasio,* 434 Mass. 1, 6 (2001). The best evidence rule does not forbid the use of "copies" of electronic records (including e-mails and text messages and other computer data files), because there is no "original" in the traditional sense. See *Commonwealth* v. *Amaral,* 78 Mass. App. Ct. 671, 675-676 (2011), citing G. L. c. 233, § 79K. However, oral testimony designed to prove the contents of an electronic record is barred for the same reasons as those underlying the best evidence rule. See *United States* v. *Diaz-Lopez,* 625 F.3d 1198, 1200-1203 (9th Cir. 2010); *State* v. *Espiritu,* 117 Hawaii 127, 133-135 (2008). Here, none of the exceptions that permit the use of secondary evidence was applicable. See Mass.G.Evid. § 1004 (2013).

a required finding of not guilty. Even without any of the erroneously admitted evidence, the jury were warranted in concluding that the defendant falsified the e-mail alleged to have been sent by Dicato to her. She testified that she was familiar with Dicato's e-mail address. The business records in evidence support Dicato's testimony that he used the same e-mail address on a consistent basis over the years and that it differed from the address on the e-mails given to the police by the defendant, which turned out to be registered to someone in the Midwest who was unconnected to the case and to be an inactive account. Even though the improperly admitted private conversations between the defendant and Jeffrey were prejudicial, there was independent evidence in the case that she had a motive to hurt Dicato to gain an advantage in their custody dispute.

Applying the appropriate standard for assessing a claim that counsel provided ineffective assistance in failing to object to evidence that was admitted at trial — whether there is a serious doubt that the result of the trial might have been different if counsel's errors had not been made, see *Commonwealth* v. *Azar*, 435 Mass. 675, 675-676, 687 (2002), and considering the strength of the Commonwealth's proof with regard to the false report charge and the nature and significance of the error, we are not left with uncertainty as to whether the defendant's guilt was fairly adjudicated on the charge of filing a false report. *Id.* at 687.

Accordingly, for the above reasons, on count one of the complaint, charging filing a false report of a crime, the judgment is affirmed. On count two of the complaint, charging criminal harassment, the judgment is reversed and the verdict is set aside.

*So ordered.*