NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-309                                        Appeals Court

COMMONWEALTH  vs.  MATTHEW G. ALDEN, JR.

No. 16-P-309.

Middlesex.      March 8, 2018. - June 21, 2018.

Present:  Green, C.J., Kinder, & Henry, JJ.

Intimidation of Witness.  Witness, Intimidation.  Evidence, Authentication, Best and secondary, Cross-examination.  Cellular Telephone.  Practice, Criminal, Cross-examination by prosecutor, Instructions to jury, Required finding.

Complaint received and sworn to in the Marlborough Division of the District Court Department on January 20, 2015.

The case was tried before Michael L. Fabbri, J.

Luke Rosseel for the defendant.
Erin D. Knight, Assistant District Attorney, for the Commonwealth.

KINDER, J.  Following a jury trial in the District Court, the defendant, Matthew G. Alden, Jr., was convicted of intimidating a witness by sending her threatening text messages in violation of G. L. c. 268, § 13B.  On appeal, the defendant

claims (1) evidence regarding the text messages was improperly admitted, (2) the judge incorrectly instructed the jury regarding the Commonwealth's burden of proof, and (3) the evidence was not sufficient to prove the defendant's guilt beyond a reasonable doubt.  We affirm.

Background.  We summarize the facts the jury could have found, viewing the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  The victim in the case, E.B., was the defendant's former girl friend.  At the time of trial, she had known the defendant for at least five years.  In January, 2015, there was a criminal case pending against the defendant, in which E.B. was a potential witness.  On January 19, 2015, E.B. reported to the police that she was receiving threatening text messages from someone she believed to be the defendant.  The messages were received from the telephone number E.B. had used to communicate with the defendant by text messages and telephone calls every few days for over one year.

The messages threatened that, if E.B. "went to court[, she would] be sorry[,] and that [the defendant] would have people come after [her] if [she] went to court."  More specifically, "[o]ne of [the messages] told [E.B.] to keep her hoe ass mouth shut.  [Another] implied that she should kill herself and she should do it tonight."  An additional text message stated that

E.B. should "leave their personal stuff out of the courtroom and that if she opened her mouth it'd be the worst thing she tried to do -- . . . or the biggest mistake she ever made." E.B. believed the text messages referred to her role as a witness in the criminal case then pending against the defendant.

The defendant testified that at the time the threatening messages were received by E.B., he and his new girl friend had been living with his aunt for "[a] couple of months." The defendant and his mother testified that the cellular telephone (cell phone) associated with the number from which the threatening messages were received was not owned by the defendant. According to the defendant, his aunt had purchased the cell phone, but it was shared with the defendant and at least six other people who lived at his aunt's residence.[1] The cell phone was not password protected and remained at the aunt's house for use by its residents. The defendant denied sending the threatening text messages to E.B. He testified that, at the time the text messages were sent, he was at the mall and did not have the cell phone with him. Finally, the defendant testified that his new girl friend did not like E.B.

Discussion. 1. Evidentiary issues. a. Authentication of text messages. "[B]efore admitting an electronic communication

---

[1] The defendant testified that his aunt, her husband, his two cousins, and their girl friends also lived at the residence.

in evidence, a judge must determine whether sufficient evidence exists 'for a reasonable jury to find by a preponderance of the evidence that the defendant authored' the communication." Commonwealth v. Oppenheim, 86 Mass. App. Ct. 359, 366 (2014), quoting from Commonwealth v. Purdy, 459 Mass. 442, 447 (2011). "[I]rrespective of whether the communication is introduced through testimony or a physical item of evidence," proponents seeking to introduce such electronic communications into evidence must first establish authenticity. Commonwealth v. Connolly, 91 Mass. App. Ct. 580, 587 (2017).

Here, the defendant filed a motion in limine to preclude evidence of the text messages because they were not "properly authenticated" -- that is, because the evidence was not sufficient to authenticate them as having been authored by him. The judge deferred ruling until trial, but ultimately concluded that the Commonwealth had established by a preponderance of the evidence that the text messages were authentic. We discern no error in that decision.

"A judge making a determination concerning the authenticity of a communication sought to be introduced in evidence may look to 'confirming circumstances' that would allow a reasonable jury to conclude that this evidence is what its proponent claims it to be." Purdy, supra at 448-449, citing Commonwealth v. Hartford, 346 Mass. 482, 488 (1963). Here, there was

evidence that, for over one year, E.B. had contacted the defendant multiple times each week using the telephone number from which the threatening messages originated. When she called that number, the defendant answered. When she sent a text message to that number to arrange a meeting with the defendant, he appeared. From this pattern of conduct, the judge could reasonably infer a direct connection between the defendant and the telephone number from which the threatening messages were sent. See Commonwealth v. Amaral, 78 Mass. App. Ct. 671, 672 (2011) ("Fatal to the defendant were the actions he took in conformity with the information contained in [the messages]").

The content of the text messages reinforced their link to the defendant. It is undisputed that at the time she received the text messages, E.B. was a witness in a pending case against the defendant. In this context, where there was evidence that the text messages directed her to "keep her hoe ass mouth shut" and "leave their personal stuff out of the courtroom" or "people [would] come after [her] if [she] went to court," it was reasonable to infer that the defendant was responsible for sending the messages.

The defendant's reliance on Commonwealth v. Williams, 456 Mass. 857 (2010), and Commonwealth v. Salyer, 84 Mass. App. Ct. 346 (2013), is misplaced. In those cases, electronic communications sent on the social networking Web site MySpace

were not properly authenticated.  In Salyer, the Commonwealth failed to introduce admissible evidence establishing any connection between the offending pages and message on MySpace and the defendant.  Salyer, supra at 355-356.  In Williams, where the messages were alleged to have been sent by the defendant's brother, the Supreme Judicial Court emphasized that there was no evidence regarding any limitation on access to a MySpace account, and no circumstances beyond the messages' content that linked them to the defendant's brother.  Williams, supra at 868-869.  The Supreme Judicial Court explained that "[a]nalogizing a My[S]pace Web page to a telephone call, a witness's testimony that he or she has received an incoming call from a person claiming to be 'A,' without more, is insufficient evidence to admit the call as a conversation with 'A.'"  Id. at 869.  Here, by contrast, there was more.  In addition to the content of the text messages, E.B.'s prior relationship with the defendant and her use of the telephone number to communicate with him over a significant period of time provided the necessary link.  Simply put, these confirming circumstances sufficiently connected the defendant to the threats.  See Purdy, 459 Mass. at 450-451.

b.  Best evidence rule.  The defendant claims that the best evidence rule precluded testimony regarding the content of the text messages.  Because the defendant never raised this argument

at trial, we review any error for a substantial risk of a miscarriage of justice.  See Commonwealth v. Leary, 92 Mass. App. Ct. 332, 336 (2017).  "The best evidence rule provides that, where the contents of a document are to be proved, the party must either produce the original or show a sufficient excuse for its nonproduction."  Commonwealth v. Ocasio, 434 Mass. 1, 6 (2001).  There is an exception, however, regarding statements of parties.  "The proponent may prove the content of a written statement of the party against whom the evidence is offered without producing or accounting for the original."  Mass. G. Evid. § 1007 (2018).  Here, once the judge made a preliminary determination that the evidence was sufficient to authenticate that the text messages were sent by the defendant, this exception applied.  Accordingly, the best evidence rule did not.  There was no error, much less a substantial risk that justice miscarried.

c.  Cross-examination of the defendant.  At the close of cross-examination of the defendant, the prosecutor posed to the defendant a series of ten questions, each asking whether the defendant had sent a particular text message.  Each question incorporated the exact language of the text message.[2]  In each instance, the defendant denied sending the text message.  On

---

[2] For example, the prosecutor asked, "[D]o you deny saying, 'I hope you kill yourself, bye-bye?'"

appeal, the defendant claims that this line of cross-examination improperly relied on facts not in evidence. We are not persuaded.

Generally, "[a] prosecutor may not conduct cross-examination 'in bad faith or without foundation.'" Commonwealth v. Christian, 430 Mass. 552, 561 (2000), quoting from Commonwealth v. White, 367 Mass. 280, 285 (1975). Here, although some of the questions included text messages not previously described by E.B., the Commonwealth had a "reasonable belief that the facts implied by the questions could be established by admissible evidence." Commonwealth v. Peck, 86 Mass. App. Ct. 34, 39 (2014). The jury had already heard the general nature of the threatening text messages through the testimony of E.B. and a police witness. Moreover, "screen shot[s]" of the text messages had been preserved and made available to the defendant. Although the screen shots themselves were never offered in evidence, the prosecutor was aware, prior to the defendant's testimony, that the judge had found "by a preponderance of the evidence that those text messages are authentic, even though they weren't presented in the form of photographs or business records." Therefore, the prosecutor had a good faith belief that the threats implied by the questions could be established by admissible evidence. Accordingly, the judge did not abuse his discretion in allowing

the cross-examination.  See Commonwealth v. Durand, 475 Mass.

657, 662 (2016).[3]

2.  Instruction.  In addition to the general instruction

that the Commonwealth had the burden of proving each element of

the offense beyond a reasonable doubt, the judge gave a

supplemental instruction that, before they could consider the

content of the text messages, the jury must be satisfied by a

preponderance of the evidence that the messages had been sent by

the defendant.[4]  The defendant claims that the supplemental

instruction was reversible error because it confused the jury

regarding the Commonwealth's burden of proof.  We disagree.

---

[3] The defendant's remaining claims regarding the
prosecutor's examination of witnesses "have not been overlooked.
We find nothing in them that requires discussion."  Commonwealth
v. Domanski, 332 Mass. 66, 78 (1954).

[4] The judge instructed the jurors on this point as follows:

"Before you can consider the content of those alleged text
messages you must first be persuaded that the person on the
other side of the conversation was, in fact, the defendant.
The prosecution has to prove what is called by a
preponderance of the evidence.  It's a different standard,
lower than the beyond a reasonable doubt standard.
Preponderance of the evidence mean[s] that the evidence
must convince you that it is more likely true than not that
the person on the other end of the conversation was, in
fact, the defendant.  If you are not convinced that it is
more likely true than not that the other person on the
alleged conversation was, in fact, the defendant then you
may not consider that conversation, in this case text
messages as alleged, you may not consider that conversation
at all against the defendant."

"We review objections to jury instructions to determine if there was any error, and, if so, whether the error affected the substantial rights of the objecting party." Beverly v. Bass River Golf Mgmt., 92 Mass. App. Ct. 595, 603 (2018) (quotation omitted). Because the Commonwealth sought to introduce evidence of the contents of text messages, an instruction on a preliminary determination of authorship was appropriate, and the instruction given was an accurate statement of the law. See Purdy, 459 Mass. at 447-450; Oppenheim, 86 Mass. App. Ct. at 363-369. The judge also properly instructed the jury on the elements of the crime, including that the Commonwealth had the burden to prove beyond a reasonable doubt that it was the defendant who directly or indirectly threatened the victim.[5] Three times the judge emphasized that the Commonwealth's burden was to prove each element of the crime beyond a reasonable doubt.

"Trial judges have 'considerable discretion in framing jury instructions, both in determining the precise phraseology used and the appropriate degree of elaboration.'" Commonwealth v. Kelly, 470 Mass. 682, 688 (2015) (quotation omitted). We acknowledge that in this case there was a fine line between the

---

[5] The judge instructed: "In order to prove the defendant guilty . . . the Commonwealth must prove three . . . elements beyond a reasonable doubt . . . . First, that the defendant either directly or indirectly made a threat" (emphasis supplied).

(1) preliminary determination of the authenticity of the text messages and (2) proof of the defendant's identity as the perpetrator of the threats.  Nevertheless, authenticity and identity are different legal concepts, and the judge did not err in explaining the distinction.  While, in the context of this case, it would have been preferable to instruct the jury more directly that authorship of the threatening text messages was an element of the offense that had to be proved beyond a reasonable doubt, the judge acted within his discretion in framing the instructions as he did.  Moreover, the judge gave a curative instruction after the defendant objected.[6]  Considering these instructions as a whole, see Commonwealth v. Allen, 474 Mass. 162, 168 (2016), we are confident that the defendant's substantive rights were not adversely affected by the supplemental jury instruction.

3.  Sufficiency.  "Where, as here, a defendant moves for required findings at the close of the Commonwealth's case and at the close of all the evidence, '[w]e [first] consider the state of the evidence at the close of the Commonwealth's case to

---

[6] "Just so . . . I'm not confusing you, the preliminary issue as to the admissibility of the text messages, the standard is preponderance of the evidence.  So you have to first determine by a preponderance of the evidence, was the defendant the person on the other side of the conversation.  Only then can you [consider] them in determining whether or not the government has proven the elements of the offense beyond a reasonable doubt."

determine whether the defendant's motion should have been granted at that time,'" Commonwealth v. Morgan, 449 Mass. 343, 349 (2007), quoting from Commonwealth v. Sheline, 391 Mass. 279, 283 (1984), that is, "whether the Commonwealth [had] presented sufficient evidence of the defendant's guilt to submit the case to the jury," Commonwealth v. Dustin, 476 Mass. 1003, 1003 (2016) (quotation omitted).  The evidence is sufficient if, "viewing the evidence in a light most favorable to the Commonwealth, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' (emphasis original)."  Commonwealth v. Cohen (No. 1), 456 Mass. 94, 120 (2010), quoting from Latimore, 378 Mass. at 677.

To establish a violation of G. L. c. 268, § 13B, "the Commonwealth was required to prove that the defendant wilfully engaged in intimidating conduct, that is, acts or words that would instill fear in a reasonable person, and did so with the intent to impede or influence a potential witness's testimony" against the defendant.  Commonwealth v. Rivera, 76 Mass. App. Ct. 530, 535 (2010).  The defendant does not dispute the threatening nature of the messages or that they were intended to impede or influence E.B., a potential witness in a criminal case pending against him.  As to the sufficiency of the evidence, the defendant's only claim is that no rational juror could have

found beyond a reasonable doubt that he authored the text messages.  We disagree.

We have previously discussed the circumstantial evidence linking the defendant to the threatening messages.  First, the jury heard that there had been a long-standing pattern of communication between the defendant and E.B. using the telephone number from which the threats originated.  Second, the jury could rationally conclude that the threats to "leave their personal stuff out of the courtroom" or "people [would] come after [her] if [she] went to court" were intended by the defendant to intimidate E.B., so that she would not testify in the case then pending against him.  Viewed in the light most favorable to the prosecution, this evidence was sufficient to prove the defendant's identity beyond a reasonable doubt.

"We also consider the state of the evidence at the close of all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case."  Sheline, supra.  However, "[d]eterioration does not occur merely because the defendant contradicted the Commonwealth's evidence . . . 'unless the contrary evidence is so overwhelming that no rational jury could conclude that the defendant was guilty.'"  Commonwealth v. Ross, 92 Mass. App. Ct. 377, 381 (2017) (citation omitted).  We do not view the uncorroborated testimony of the defendant and his mother as

overwhelming contrary evidence.  "As the jury were free to disbelieve the defendant's account, there was nothing compelling in this evidence which caused the prosecution's case to deteriorate."  Commonwealth v. Walker, 401 Mass. 338, 343-344 (1987).  Accordingly, we discern no error in the judge's denial of either of the defendant's motions for a required finding of not guilty.

Judgment affirmed.