NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

25-P-720                                          Appeals Court

COMMONWEALTH  vs.  MICHAEL T. MILAN.

No. 25-P-720.

Essex.      March 16, 2026. – May 14, 2026.

Present: Meade, Hodgens, & Allen, JJ.


Obscenity, Dissemination of matter harmful to minor. Social
    Media. Constitutional Law, Indictment. Waiver. Practice,
    Criminal, Instructions to jury, Waiver, Loss of evidence by
    prosecution. Evidence, Best and secondary.



    Indictments found and returned in the Superior Court
Department on December 15, 2021.

    The cases were tried before Brent A. Tingle, J.


    David M. Osborne for the defendant.
    Kristen W. Jiang, Assistant District Attorney, for the
Commonwealth.


    MEADE, J.  After a jury trial, the defendant was convicted

of six counts of disseminating harmful material to a minor.  On

appeal, he claims that defects in his indictments require his

convictions to be reversed; the indictments were improperly

amended; the judge abused his discretion in not giving a

requested jury instruction; and the judge abused his discretion by fashioning an inadequate remedy for the Commonwealth's loss or destruction of potentially exculpatory evidence. We affirm.

Background. In 2019, twenty-two year old Ipswich police Officer Kelly Phelan, acting in an undercover capacity, created a social media account in which she posed as a fourteen year old girl, "Crayon Mia." Phelan joined an online social media group and posted a message. While she did not remember the exact wording of the message, it was Phelan's practice to state, "I'm Mia. I'm 14 years old. I'm from Massachusetts. Anyone want to chat?" She did not preserve this initial message or her associated profile photograph. Phelan stated that it was not her "practice" to do so at the time. She feared that if she "burn[ed] the undercover account," which took some time to establish as authentic, she would be unable to use it in future investigations. Phelan admitted that this was an "investigatory mistake" as she had graduated from the police academy only a few months prior to this investigation.

Several hours after her initial post, at 1:13 A.M., Phelan received a private message from the thirty-three year old defendant, who used the profile name "Magic Mike." Over the course of two months, the defendant exchanged frequent messages with "Crayon Mia." In these messages, Phelan repeatedly told

the defendant that she was fourteen years old, had never had a boyfriend, and that she was sexually inexperienced.

Over time, the defendant's messages became increasingly sexual in nature. On five separate occasions, the defendant sent Phelan photographs of his erect penis, and on one occasion he sent a photograph of a naked woman. He also asked Phelan to send intimate photographs of herself and described a variety of sexual acts he wished to do with her. The defendant noted that he did not live far away, suggested that they could meet, and he offered to "be [her] practice."

At trial, the defendant did not dispute that he had distributed harmful matter in his online communications with Phelan, but rather argued that he did not believe that "Crayon Mia" was actually a minor. Relative to this contested issue, the Commonwealth provided the jury with numerous screen shots of their conversations in which "Crayon Mia" identifies herself as being fourteen years old and mentions her sexual inexperience. Two of the screen shots included photographs of Phelan.

In his defense, the defendant testified that he believed that "Crayon Mia" was an adult engaging in sexual role play, i.e., "someone playing the part of a 14-year-old." In support, the defendant claimed the platform users had to certify that they were eighteen years old or older to be admitted to the online social media group, which was known for role playing. In

addition, in his view, the photographs on Phelan's profile depicted not a minor, but a woman in her early twenties.  He also testified that "Crayon Mia" was sexually suggestive from the beginning of their communications and told him, "I'll do anything you want."

The defendant also highlighted Phelan's failure to preserve her profile photograph and the initial message she posted.  He later argued to the jury that Phelan had intentionally destroyed those items because they undercut the Commonwealth's theory of the case and supported the defendant's claim that he believed he was role playing with an adult.

1.  The indictments.  Each indictment charged that the defendant "did disseminate harmful matter to a minor, knowing said matter to be harmful; or did possess such matter with the intent to disseminate it to a minor."[1]  This tracked the language found in an older version of G. L. c. 272, § 28, as appearing in St. 1982, c. 603, § 2.  In 2011, the statute was amended to add the requirement that the defendant "purposely disseminates to a

---

[1] A "matter is harmful to minors if it is obscene or, if taken as a whole, it (1) describes or represents nudity, sexual conduct or sexual excitement, so as to appeal predominantly to the prurient interest of minors; (2) is patently contrary to prevailing standards of adults in the county where the offense was committed as to suitable material for such minors; and (3) lacks serious literary, artistic, political or scientific value for minors."  G. L. c. 272, § 31.

person he knows or believes to be a minor any matter harmful to minors."  See G. L. c. 272, § 28, as amended by St. 2011, c. 9, § 19.  For the first time on appeal, the defendant claims that because his indictments did not contain the knowledge or belief element, relative to dissemination to a minor, and that his charged conduct postdated 2011, his indictments failed to charge a crime.  We disagree.[2]

General Laws c. 277, § 47A, provides, in pertinent part:

> "In a criminal case, any defense or objection based upon defects in the institution of the prosecution or in the complaint or indictment, other than a failure to show jurisdiction in the court or to charge an offense, shall only be raised prior to trial and only by a motion in conformity with the requirements of the Massachusetts Rules of Criminal Procedure.  The failure to raise any such defense or objection by motion prior to trial shall constitute a waiver thereof, but a judge or special magistrate may, for cause shown, grant relief from such waiver" (emphasis added).

To avoid waiver, the defendant first claims that his challenge is based on "a failure to show jurisdiction in the court or to charge an offense," i.e., the claim relates to the Superior Court's subject matter jurisdiction.  However, this is

---

[2] The defendant claims the prior version of the statute is unconstitutional.  This is incorrect.  To the extent a Federal District Court judge held otherwise, we are not bound by that decision.  See Commonwealth v. Pon, 469 Mass. 296, 308 (2014).  In any event, in Commonwealth v. Jones, 471 Mass. 138, 144-146 (2015), the Supreme Judicial Court determined that the prior version of the statute contained an implied element of knowledge, even if not explicitly stated therein, and upheld its constitutionality.

incorrect. "Subject matter jurisdiction concerns the power of the court to entertain a particular category of case." Commonwealth v. Doughty, 491 Mass. 788, 805 (2023). "The Superior Court has 'original jurisdiction of all crimes.'" Id. at 805-806, quoting G. L. c. 212, § 6. "[A] defect in an indictment is not a question concerning the subject matter jurisdiction of the court." Doughty, supra at 806.[3] Because the defendant did not raise this issue prior to trial, and it is not based on subject matter jurisdiction, it cannot be a basis to avoid statutory waiver. See Commonwealth v. Lamont L., 438 Mass. 842, 845 (2003); Commonwealth v. Hrycenko, 417 Mass. 309, 312 (1994).

However, the second exception to waiver under G. L. c. 277, § 47A, i.e., a claim that his indictments do not charge crimes, does apply to the defendant. Although not waived, the claim is without merit. "An indictment will not be dismissed 'if the offense is charged with sufficient clarity to show a violation of law and to permit the defendant to know the nature of the accusation against him.'" Commonwealth v. Sullivan, 82 Mass.

---

[3] The defendant claims that this case is controlled by Commonwealth v. Palladino, 358 Mass. 28, 31 (1970), as well as others to which he cites in support of his jurisdiction claim, see, e.g., Commonwealth v. Garrett, 473 Mass. 257, 264 (2015); Commonwealth v. Senior, 454 Mass. 12, 14 (2009); Commonwealth v. Andler, 247 Mass. 580, 581-582 (1924). However, the contrary conclusions in all of these cases have been disavowed by Doughty, 491 Mass. at 805-806 & n.26.

App. Ct. 293, 295-296 (2012), quoting Commonwealth v. Fernandes, 430 Mass. 517, 520 (1999), cert. denied sub nom. Martinez v. Massachusetts, 530 U.S. 1281 (2000). "It is not necessary for the Commonwealth to set forth in the . . . indictment every element of the crime to withstand a motion to dismiss" (citation omitted). Sullivan, supra at 296.

Here, pursuant to G. L. c. 272, § 28, as set forth in the indictments, the defendant had adequate notice that he was charged with dissemination of harmful materials to a minor. Even if the charging language in the indictments did not exactly track the language added by the Legislature in 2011, each indictment, when read as a whole, "identifie[d] that the offense charged is a violation of [G. L. c. 272, § 28], which is a crime." Doughty, 491 Mass. at 806. See G. L. c. 277, § 34. Finally, even under the pre-2011 version of § 28, a defendant could properly be charged with dissemination in cases where the recipient was actually an adult posing as a minor. See Commonwealth v. Ericson, 85 Mass. App. Ct. 326, 336 n.13 (2014).

The defendant also claims his convictions must be vacated because he was convicted of crimes not charged by the grand jury. Specifically, the defendant claims that the prosecutor's opening statement constructively amended his indictments, over

his objection,[4] by stating that the evidence would show that the defendant "sent explicit messages, not to a minor, but to an undercover police officer posing as a fourteen-year-old." We disagree.

As stated above, the indictments properly charged the crime of dissemination under G. L. c. 272, § 28, under which the defendant could have been prosecuted even prior to the Legislature clarifying in 2011 that the defendant must know or believe that the intended recipient is a minor. See Commonwealth v. Jones, 471 Mass. 138, 144-146 (2015) (prior version of § 28 contained implied element of knowledge [or belief] that recipient was minor). Accordingly, the prosecutor, in laying out the expected evidence, did not amend the indictments by explicitly stating that which the Supreme Judicial Court had held was fairly implied in § 28. In other words, the "knows or believes to be a minor" language was not essential to the description of the crime charged, nor did it add an essential element to the crime. Contrast Commonwealth v. Ruidiaz, 65 Mass. App. Ct. 462, 463-464 (2006). For these reasons, the judge properly denied the defendant's motion for a required finding of not guilty.

---

[4] At the conclusion of the prosecutor's opening statement, the defendant moved for a required finding of not guilty based on this claim.

2.  <u>Jury instruction</u>.  The defendant also claims that the judge was required to give his requested jury instruction on the definition of "belief," which would have informed the jury that:

> "[T]he Commonwealth must prove beyond a reasonable doubt that the defendant was convinced to a moral certainty that the recipient was a minor.  It's not enough for the Commonwealth to prove that the [d]efendant merely suspected that there was a probability that the recipient was a minor."

We disagree.

The requested jury instruction confused the requirement that the Commonwealth prove the elements beyond a reasonable doubt and the meaning of a defendant's belief.  A defendant need not believe a proposition beyond a reasonable doubt to believe it, as a reasonable doubt is not equivalent to disbelief.  Rather, the proper instruction was that the Commonwealth had to prove beyond a reasonable doubt that the defendant believed the recipient to be a minor.

At the charge conference with the parties, the judge explained that he declined to give the instruction as requested because his intended definition of reasonable doubt would be tied to all the elements.  Because the defendant objected to the judge's ruling denying that instruction, we review for prejudicial error.  See <u>Commonwealth</u> v. <u>Kelly</u>, 470 Mass. 682, 687 (2015).

"A trial judge is not required to instruct the jury in the terms requested by a defendant so long as the substance of the requested instructions is adequately covered." Commonwealth v. Sinai, 47 Mass. App. Ct. 544, 547 (1999). Indeed, "[j]udges have broad discretion in framing jury instructions, including determining the appropriate degree of elaboration." Commonwealth v. Toolan, 490 Mass. 698, 708 (2022).

Here, the judge properly instructed the jury that they were required to find, beyond a reasonable doubt, in addition to the other elements, "that the defendant intentionally disseminated the [harmful] matter to a person he knew or believed to be a minor." He repeated this when he defined the elements. Important to the defendant's claim, the judge also instructed the jury that "beyond a reasonable doubt" requires the jurors have in their "minds an abiding conviction to a moral certainty that the charge is true," and that "[i]t is not enough for the Commonwealth to establish a probability, even a strong probability, that the defendant is more likely to be guilty than not guilty." This was a correct statement of the law, and adequately conveyed the substance of the correct portion of the requested instruction. See Sinai, 47 Mass. App. Ct. at 547. There was no error.

3. Lost or destroyed evidence. Finally, the defendant claims that the judge erred in three ways, delineated below, in

how he addressed the Commonwealth's failure to preserve pieces of potentially exculpatory evidence, which included the original profile photograph used by Officer Phelan on the social media platform account and that officer's original post to the online group.

First, the defendant claims that the judge abused his discretion by denying the motion to dismiss his indictments based on the Commonwealth's failure to preserve the above-noted pieces of evidence.  We disagree.

"We will not disturb a judge's decision regarding the proper remedy for the loss of evidence absent a clear abuse of discretion." Commonwealth v. Meas, 467 Mass. 434, 448, cert. denied, 574 U.S. 858 (2014), quoting Commonwealth v. Carr, 464 Mass. 855, 870 (2013).  For charges to be dismissed due to the loss or destruction of potentially exculpatory evidence, the defendant bears an initial burden to establish a "reasonable possibility, based on concrete evidence rather than a fertile imagination," Commonwealth v. Neal, 392 Mass. 1, 12 (1984), quoting State v. Michener, 25 Or. App. 523, 532 (1976), that the evidence would have been favorable to him.  See Commonwealth v. Rios, 496 Mass. 11, 31 (2025); Commonwealth v. Olszewski, 416 Mass. 707, 714 (1993), cert. denied, 513 U.S. 835 (1994).  "If the defendant meets that initial burden, 'a balancing test is employed to determine the appropriateness and extent of remedial

action.'" Commonwealth v. Moore, 480 Mass. 799, 811 (2018),

quoting Commonwealth v. Willie, 400 Mass. 427, 432 (1987),

abrogated in part on other grounds by Commonwealth v. Williams,

455 Mass. 706, 714-719 (2010). The judge 'must weigh the

culpability of the Commonwealth, the materiality of the

evidence, and the potential prejudice to the defendant.'"

Moore, supra, quoting Willie, supra.

As an initial matter, relative to the missing profile

photograph,[5] as the Commonwealth notes, in fashioning a jury

instruction on the matter, the judge did not appear to have

properly analyzed the defendant's initial burden. The judge

told the parties that "the defendant has sustained [his] initial

burden, at least, of demonstrating that [the] missing

evidence . . . [is] potentially relevant here . . . ." Mere

relevance, however, differs in kind from evidence that provides

a reasonable possibility that the missing photograph would have

been favorable to the defendant. See Neal, 392 Mass. at 12.

The missing profile photograph would have been favorable to

the defense only if Phelan appeared to be older than she

appeared in the other two photographs that were before the jury.

In similar fashion, the original post to the online group would

---

[5] Relative to Phelan's original post to the online group, the judge stated he was "less persuaded" that it satisfied the "standard of being potentially exculpatory."

have been favorable to the defendant only if it gave credence to his argument that he and the undercover officer were simply engaging in "role-play," or if the original post was markedly different in tone from the officer's initial direct messages with the defendant in which she asks the defendant his age, where he was from, and whether he was "good" with her being "14."

Relative to these matters, the defendant was able to use the missing evidence to his benefit through his own testimony. The defendant testified that he thought the person he was communicating with was an adult posing as a child. He claimed that she looked older in the missing profile photograph, and he claimed that her initial post was more explicit, stating that she would "do anything [he] want[ed]." At bottom, this did not establish a "reasonable possibility, based on concrete evidence rather than a fertile imagination," that the missing evidence would have been favorable to him (citation omitted). Neal, 392 Mass. at 12.

Even if the defendant did meet his original burden, his claim does not survive the balancing test. As to the Commonwealth's culpability, contrary to the defendant's claim, the judge found that the officer was not "morally culpable" for the destruction which resulted from her lack of experience. This was supported by the officer's testimony. Even though the

judge believed that she could have preserved the account without deleting the photograph, he did not find her to be dishonorable in purpose. In the end, this amounts to negligence, and the defendant failed to establish bad faith. See Commonwealth v. Heath, 89 Mass. App. Ct. 328, 337 (2016). See also Willie, 400 Mass. at 432 (Commonwealth not required "to prove good faith or earnest efforts to preserve the evidence").

The remaining components of the balancing test, materiality and potential prejudice, do not redound to the defendant's benefit. While the missing items could have been material to whether the defendant believed Phelan was actually an adult, the defendant capitalized on the absence of evidence to further his theory that he knew he was communicating with an adult. See Commonwealth v. Kee, 449 Mass. 550, 555-557 (2007) (no prejudice where defendant used unpreserved evidence to aid defense). In the end, the denial of the motion to dismiss was not an abuse of discretion, nor was the denial of the motion without an evidentiary hearing.[6]

Second, the defendant claims that the judge abused his discretion by permitting Phelan to testify regarding the original message that she posted to the online social media

---

[6] The defendant has failed to cite to relevant legal authority for his argument that the judge ought to have conducted an evidentiary hearing on this issue.

group.  For the first time on appeal,[7] the defendant claims this violated the best evidence rule which mandates reversal of his convictions.  We disagree.

"The best evidence rule provides that, where the contents of a document are to be proved, the party must either produce the original or show a sufficient excuse for its nonproduction." Commonwealth v. Ocasio, 434 Mass. 1, 6 (2001).  See Mass. G. Evid. § 1002 (2026).  A sufficient excuse for nonproduction may arise when evidence is "lost or destroyed, and not by the proponent acting in bad faith" (citation omitted).  Commonwealth v. Connolly, 91 Mass. App. Ct. 580, 585 (2017).

The defendant claims that Phelan's practice of introducing herself as a fourteen year old went to the heart of the issue the jury had to decide, i.e., whether the defendant believed she was a minor.  Even assuming the Commonwealth used the testimony to prove the content of the posting, and the rule therefore applied, the exception may be applied for nonproduction because the original post was lost or destroyed, and that destruction

---

[7] At trial, the defendant objected to Phelan's testimony because he did not have copies of the social media post.  He did not claim her testimony violated the best evidence rule.  The Commonwealth argues that the claim is not preserved and may be reviewed only to determine if a substantial risk of a miscarriage of justice was created.  In his reply brief, the defendant does not argue to the contrary.

was not done in bad faith.  See <u>Connolly</u>, 91 Mass. App. Ct. at
585.

     The defendant correctly maintains that for the exception to
apply, the judge must have made findings that the original
posting once existed, its loss or destruction was not due to the
"serious fault" of the Commonwealth, and that a reasonable
search had been made for the post.  See <u>Ocasio</u>, 434 Mass. at 6-
7, quoting <u>Fauci</u> v. <u>Mulready</u>, 337 Mass. 532, 540 (1958).  While
the judge did not expressly make these findings, the lack of an
objection and a request for such findings is undoubtedly the
reason why.  In any event, the one-time existence of the posting
was never in dispute, nor that it no longer existed because it
had been deleted.  The judge did find that the officer had not
acted in bad faith and stated that he did not find her to be
"morally culpable."  In fact, when the judge denied the
defendant's objection to Phelan's testimony about what she
wrote, the judge told the defendant, "Well, I've ruled that I'm
not going to dismiss the indictment based upon that."  In this
light, the judge did not abuse his discretion by admitting the
officer's testimony as a substitute for the original posting.[8]

---

[8] Relying on <u>Commonwealth</u> v. <u>Salyer</u>, 84 Mass. App. Ct. 346,
356 n.10 (2013), the defendant claims that oral testimony is not
permitted to prove the contents of a document.  While this is
true in general applications of the rule, we noted in <u>Salyer</u>
that "none of the exceptions that permit the use of secondary
evidence was applicable."  <u>Id</u>.  In other words, <u>Salyer</u> did not

Even if the judge "made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted), L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014), the defendant has failed to establish that the testimony created a substantial risk of a miscarriage of justice. In addition to the strength of the Commonwealth's case, we keep in mind that the best evidence rule is "a doctrine of evidentiary preference 'principally aimed, not at securing a writing at all hazards and in every instance, but at securing the best obtainable evidence of its contents'" (emphasis omitted). Ocasio, 434 Mass. at 6, quoting 2 McCormick, Evidence § 237 (5th ed. 1999). In the posture of preference over prohibition, we also return to the effect of the testimony, and, as stated above, how the defendant used it in

---

involve lost or destroyed evidence. Moreover, there is no blanket prohibition on utilizing oral testimony as secondary evidence. See Commonwealth v. Brea, 488 Mass. 150, 159 n.12 (2021) (permitting testimony as secondary evidence of content of record); O'Connor v. Boston Retirement Bd., 304 Mass. 471, 472-473 (1939) (retiree's written change of beneficiary form and acknowledgement that could not be located by board "properly shown by oral evidence"); Grover v. Smead, 295 Mass. 11, 13 (1936) (car owner's oral testimony regarding contents of original certificate of registration that had been lost or destroyed was properly admitted). See also 20 W.G. Young, J.R. Pollets & C. Poreda, Evidence § 1008.1 (2d ed. 1998) ("Massachusetts does not recognize 'degrees of secondary evidence . . .'").

his defense, including his testimony that he thought he was communicating with an adult posing as a child.

Third, the defendant claims the judge abused his discretion in his jury instruction regarding lost or destroyed evidence because the instruction mentioned only the profile photograph and not Phelan's introductory text messages.[9]  We disagree.

The judge explained that the instruction referenced only the photograph, and not the text messages, because he was not convinced of the potential exculpatory nature of the messages. In contrast to the profile photograph, the text messages did not relate to the harmful materials, and were merely preliminary conversations that did not go "directly to the issue of how someone goes about determining whether they're dealing with a minor."  Furthermore, the judge noted that defense did not argue entrapment, which he thought might have made the text messages exculpatory.  On the other hand, he stated that the profile photograph went directly to the issue of the defendant's belief regarding "Crayon Mia's" age.

Given the judge's determination that the introductory text messages did not possess a potential exculpatory value and his

---

[9] The judge instructed as follows:  "Lost or Destroyed Exculpatory Evidence.  You have heard that the initial [social media platform] profile photo[graph] utilized by Officer Phelan for the profile at issue in this case was not preserved by her. You may but are not required to infer that if this evidence had been preserved, it would have been favorable to the defendant."

finding that the defendant, "as a practical matter," was able to testify as to his recollections of what the messages stated as part of his defense, the judge concluded that he would leave it to the jury to decide what to credit.  On this record, in fashioning the instruction, we cannot conclude that the judge "made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted).  L.L., 470 Mass. at 185 n.27.

Judgments affirmed.