NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11472

COMMONWEALTH  vs.  TARI RICHARDSON.


Plymouth.     March 6, 2014. - August 7, 2014.


Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly,
& Lenk, JJ.[1]



Firearms.  Practice, Criminal, Sentence, Execution of sentence,
     Investigation of jurors, Voir dire.  Evidence, Firearm,
     Prior violent conduct, Identity.  Jury and Jurors.
     Statute, Construction.




     Indictments found and returned in the Superior Court
Department on April 27, 2007.

     The cases were tried before Jeffrey A. Locke, J., and a
posttrial motion to inquire of jurors or for alternative relief
was heard by him.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


     William W. Adams for the defendant.
     Gail M. McKenna, Assistant District Attorney, for the
Commonwealth.
     Michael J. Fellows, for Committee for Public Counsel,
amicus curiae, submitted a brief.

_____

     [1] Justice Ireland participated in the deliberation on this
case prior to his retirement.

GANTS, J.  In Bynum v. Commonwealth, 429 Mass. 705, 707, 709 (1999), we declared that, where the Legislature enacts a sentencing enhancement statute that provides for a longer sentence where a defendant convicted of the crime has one or more specified prior convictions, "[t]he prior offense is not an element of the crime for which a defendant is charged but concerns the punishment to be imposed if he is convicted . . . and the prior offense is proved."  We, therefore, concluded that the Legislature did not intend that two sentences be imposed, one for the underlying offense and a second for having committed the offense after a prior conviction of the same offense.  Id. at 709.  Here, the defendant was convicted of a firearms offense for which there were two applicable sentencing enhancement statutes, and the Commonwealth proved convictions of separate prior offenses for each.  The primary issue on appeal is whether the defendant may be sentenced under both sentencing enhancement statutes.  We conclude that, unless the Legislature has explicitly declared its intent to permit multiple sentencing enhancements, a defendant may be sentenced under only one sentencing enhancement statute.[2]

---

[2] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services.

Background.  Because the defendant challenges the sufficiency of the evidence, we recite the evidence at trial in the light most favorable to the Commonwealth.  After midnight on March 4, 2007, the defendant, an African-American man wearing a white T-shirt, entered a night club in Brockton, along with another African-American man wearing a white T-shirt.  The club manager, Aldo Fernandes, recognized the defendant from a prior incident at the club, and pointed the defendant and his companion out to two security staff members, Andy Alerte and Aaron Crutchfield.  After the club closed at 1 A.M., and the staff ushered patrons outside, Brockton police Officer Francis Czarnowski, who was working on paid security detail at the club and was walking toward Main Street to direct vehicles exiting its parking lot, heard gunshots coming from the direction of Forest Avenue.  Officer Czarnowski proceeded in the direction of the shots, where he observed two groups arguing in the intersection.  Moments later, he saw an African American man wearing a white T-shirt pick up a firearm from the ground, and fire three shots into the larger group.  Officer Czarnowski yelled for the shooter to stop, whereupon the shooter and another African-American man, who was wearing a brown shirt, fled down Forest Avenue, with Officer Czarnowski in pursuit.

Fernandes, who was observing the departing patrons in the parking lot, heard a gunshot from the intersection of Main

Street and Forest Avenue, followed by more gunshots coming from further down Forest Avenue. He then saw the defendant running down Forest Avenue alone, with Officer Czarnowski close behind him in hot pursuit. From where he was standing in the club parking lot, Fernandes had an unobstructed and well-lit view of the defendant being chased by Officer Czarnowski.[3]

Alerte was standing outside the club around closing time when he saw one of the two men Fernandes had earlier pointed out to him at the corner of Forest Avenue and Main Street, and heard a loud bang, followed by another loud bang, coming from that area. He saw one of the two men bend over, grab something from the bushes, hold an object the way one would hold a firearm, and then start running down Forest Avenue, with Officer Czarnowski running behind him.

Officer Czarnowski pursued the two individuals into a driveway of a nearby house. The man who had shot earlier fired at Czarnowksi four times; the officer took cover behind two barrels and returned fire. Thereafter, the shooter and his companion jumped over the fence into the back yard of an adjacent house and escaped.

The next day, Fernandes identified the defendant from an array of photographs as the person he had seen at the night club

---

[3] The defendant's expert testified that Aldo Fernandes was 222 feet away from the person he claimed to have identified as the defendant.

just after midnight, and who he later observed being chased down the street by Officer Czarnowski.  Alerte identified two photographs from the array, including a photograph of the defendant, stating both resembled the person Fernandes pointed out to him, whom he later saw pick up an object from the bushes. While being shown the array, he did not favor one photograph over the other, but at trial he testified that he favored the photograph of the defendant.  Crutchfield also identified the defendant as the person Fernandes had asked him to keep an eye on, and whom he had later asked to move along in the parking lot. Officer Czarnowski was unable to select the defendant's photograph from the array.

The defendant was questioned by police two days after the shooting.  After waiving the Miranda rights, he initially denied being at the club on the night of the shooting, then admitted that he arrived late and alone.  He stated that he heard a shot go off when he was in the middle of Main Street and ducked down, fearful of being hit by a stray bullet.  He denied that he had been on Forest Avenue, stating that he later ran down another street to escape from the shooting.

The defendant was indicted on charges of armed assault with intent to murder, in violation of G. L. c. 265, § 18 (b), and unlawful possession of a firearm, in violation of G. L. c. 269,

§ 10 (a).[4]  The latter indictment incorporated three counts, the first alleging only the unlawful possession itself; the second alleging unlawful possession by a person previously convicted of a like firearms offense, in violation of G. L. c. 269, § 10 (d);[5] and the third alleging unlawful possession by a person previously convicted of a violent crime or serious drug offense, in violation of G. L. c. 269, § 10G (a).[6]  A Superior Court jury found the defendant guilty of armed assault with intent to murder and unlawful possession of a firearm, and after a jury-waived trial, the judge found under the sentencing enhancement provisions of § 10 (d) that the defendant previously had been convicted of unlawful possession of a firearm, and under the sentencing enhancement provisions of § 10G (a) that the

---

[4] The defendant was also indicted on a charge of assault by means of a dangerous weapon, in violation of G. L. c. 265, § 15B (b), but the judge at trial concluded that this offense was a lesser included offense of assault with intent to murder and entered a required finding of not guilty.

[5] General Laws c. 269, § 10 (d), provides, "Whoever, after having been convicted of any of the [unlawful possession of a firearm] offenses set forth in paragraph (a). . . . commits a like offense . . . shall be punished by imprisonment in the state prison for not less than five years nor more than seven years . . . . ."

[6] General Laws § 269, § 10G (a), provides, "Whoever, having been previously convicted of a violent crime or of a serious drug offense, both as defined herein, violates the provisions of paragraph (a) . . . of section 10 shall be punished by imprisonment in the state prison for not less than three years nor more than [fifteen] years . . . . ."

defendant previously had been convicted of assault and battery on a police officer.

The judge sentenced the defendant to from eighteen to twenty years in State prison on the conviction of armed assault with intent to murder.[7]  With respect to the sentencing enhancements on the conviction of unlawful possession of a firearm, the judge imposed a sentence of from six to seven years in the State prison on the repeat offender count under § 10 (d), and a sentence of from six to ten years in the State prison on the prior violent offender count under § 10G (a),[8] both to run concurrently with each other and with the sentence on the conviction of armed assault with intent to murder.[9]

In an unpublished memorandum and order pursuant to Appeals Court rule 1:28, a panel of that court affirmed the defendant's

---

[7] The Appellate Division of the Superior Court amended the sentence on this conviction to from fifteen to twenty years in State prison.

[8] We characterize a person who is subject to sentencing under § 10G after being convicted of the unlawful carrying of a firearm as an "armed career criminal" only where the defendant has three prior convictions of a violent crime or serious drug offense.  Commonwealth v. Anderson, 461 Mass. 616, 626 n.10 (2011).  The defendant was found to have only one prior conviction of a violent crime, so we characterize him as a prior violent offender.

[9] The trial judge initially ordered the sentences for the two counts to run concurrent with each other, but from and after the sentence on the conviction of assault with intent to murder; the Appellate Division of the Superior Court amended the sentences to run concurrent both with each other and with the sentence on the conviction of assault with intent to murder.

convictions of assault with intent to murder and unlawful possession of a firearm. However, the panel vacated the two sentences imposed pursuant to the sentencing enhancement statutes, and remanded the matter for "resentencing pursuant to a single sentencing enhancement provision, whereupon the count under the remaining sentencing enhancement provision shall be dismissed and the finding set aside." Commonwealth v. Richardson, 80 Mass. App. Ct. 1103 (2011). We granted the defendant's application for further appellate review.

Discussion. 1. Multiple sentencing enhancements. Statutes providing for enhanced sentencing based on a defendant's prior convictions "do not create independent crimes, but enhance the sentence for the underlying crime." Commonwealth v. Johnson, 447 Mass. 1018, 1019-1020 (2006), citing Bynum, 429 Mass. at 708-709. Therefore, the violations of § 10 (d) and § 10G (a) are not separate crimes; instead, they are separate sentencing enhancements for the same underlying crime of unlawful possession of a firearm, in violation of § 10 (a).

The Legislature has "broad power to define crimes, and to create punishments for them." Commonwealth v. Alvarez, 413 Mass. 224, 231 (1992). This power includes the authority to require that a defendant be sentenced under multiple sentencing enhancements where his prior convictions subject him to enhanced

punishment under multiple statutes.  Id.  See Missouri v. Hunter, 459 U.S. 359, 368 (1983) ("[s]imply because two criminal statutes may be construed to proscribe the same conduct . . . does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes").

The limitation on the imposition of multiple sentencing enhancements is not legislative authority, but legislative intent.  "Where the Legislature has specifically authorized cumulative punishment under two statutes, even if the two statutes proscribe the same conduct . . . , a court's job of statutory construction is terminated, and the intent of the Legislature is to be enforced."  Alvarez, supra at 232.  Here, neither § 10 (d) nor § 10G, nor any other statutory provision, describes what is to happen when a defendant is convicted of a crime and is found to have prior convictions that subject him to sentencing under more than one enhancement.  The Commonwealth asserts, without citation to the statutory text or legislative history, that, where multiple sentencing enhancements apply, the Legislature intended to mandate a penalty between the highest minimum and the highest maximum possible sentences under both enhancements.  As applied here, because § 10 (d) provides for a minimum sentence of five years and a maximum sentence of seven years, and § 10G (a) provides for a minimum sentence of three

years and a maximum sentence of fifteen years, the Commonwealth contends that the judge should be able to impose a sentence of no less than five years and no more than fifteen years, in one "consolidated" judgment under both sentencing enhancements.[10]

It would certainly be permissible for the Legislature to so provide, and we recognize that it is arguable that the Legislature intended that a defendant with a prior conviction of a drug charge or a crime of violence who unlawfully possesses a firearm be required to serve no less than five years in State prison, and that a defendant who has also been convicted of a prior firearms offense be subject to a prison term of up to fifteen years.  But, where there is nothing in the statutory language or the legislative history to suggest that the Legislature intended to combine the minimum and maximum terms of multiple sentencing enhancement provisions in this manner, we must conclude that the legislative intent regarding this question is ambiguous.  See Busic v. United States, 446 U.S. 398, 407 (1980) (statutes ambiguous where they "fail[ed] to address . . . whether Congress intended . . . to provide a duplicative enhancement [for] the underlying felony" which already contained firearm enhancement), superseded by statute as recognized by United States v. Gonzales, 520 U.S. 1, 9-11 (1997)

---

[10] The Commonwealth concedes that, pursuant to Bynum v. Commonwealth, 429 Mass. 705, 707, 709 (1999), the defendant's sentence must consist of a single judgment.

(statutory amendment clarified congressional intent to authorize enhanced penalties under both statutes).

Under the rule of lenity, "if we find that the statute is ambiguous or are unable to ascertain the intent of the Legislature, the defendant is entitled to the benefit of any rational doubt." Commonwealth v. Constantino, 443 Mass. 521, 524 (2005). "This principle applies to sentencing as well as substantive provisions." Commonwealth v. Gagnon, 387 Mass. 567, 569 (1982). Based on this well-established principle of statutory construction, we will not presume, absent a clear statement, that the Legislature intended to impose multiple sentencing enhancements to a single underlying offense.[11] Because neither of the enhancement provisions at issue in this case contains a clear statement of legislative intent regarding the imposition of multiple sentencing enhancements, the defendant may only be sentenced pursuant to one of the enhancement statutes.

We briefly discuss the procedure to be followed when a defendant is charged with multiple sentencing enhancement provisions applicable to a single underlying offense. The

---

[11] Cf. Commonwealth v. Hawkins, 21 Mass. App. Ct. 766, 769-770 (1986), citing Simpson v. United States, 435 U.S. 6, 14 (1978) (absent clear statement from Legislature, no extra enhancement for use of firearm during commission of felony when underlying felony -- armed robbery -- already contains aggravating factor).

Commonwealth may charge a defendant under multiple sentencing enhancement statutes, especially where it may be unsure which of a defendant's prior convictions it will be able to prove at trial. It may then exercise its prosecutorial prerogative to decide which enhancement provision will apply at sentencing by entering a nolle prosequi of all but one sentencing enhancement count, provided it does so before sentencing. See Mass. R. Crim. P. 16, 378 Mass. 885 (1979) ("prosecuting attorney may enter a nolle prosequi of pending charges at any time prior to the pronouncement of sentence. . . . After jeopardy attaches, a nolle prosequi entered without the consent of the defendant shall have the effect of an acquittal of the charges contained in the nolle prosequi"). Where, as here, the Commonwealth did not exercise its authority to enter a nolle prosequi of one of the enhancement counts before sentencing, the decision regarding which sentence will survive on remand rests with the sentencing judge. See Commonwealth v. Rivas, 466 Mass. 184, 190-191 & n.9 (2013).

2. Sufficiency of the evidence. The defendant claims that the evidence was insufficient as a matter of law to identify him as the person who possessed the firearm and fired multiple times at Officer Czarnowski. Viewing the evidence in the light most favorable to the Commonwealth, as we must in evaluating such claims, see Commonwealth v. Latimore, 378 Mass. 671, 676-677

(1979), we conclude that the evidence described earlier in this opinion was sufficient to support the jury's verdicts.

3. <u>Postverdict inquiry of jurors</u>.  The defendant contends that the judge abused his discretion by failing to order a postverdict inquiry of female jurors.  Ten days after the jury's verdict, the defendant's brother signed an affidavit in which he attested that, during a recess in trial proceedings, he overheard a woman, who was between twenty-five and thirty years of age, say during a telephone call that her boss was the brother or cousin of the prosecutor who was trying the case. The defendant's brother was not certain that the woman he overheard was a juror, but he had seen her in the court room and had also seen her speaking with a juror when she was outside the court room.  The defendant requested the trial judge either to conduct a voir dire of the jurors or to show jurors' photographs to the witness to determine whether the woman he saw was a juror.  The judge, over the Commonwealth's objection, allowed the defendant's motion to the extent that he permitted defense counsel to obtain copies of juror photographs through the registry of motor vehicles so that they could be shown to the defendant's brother.[12]

---

[12] The Commonwealth appealed the judge's decision to the single justice, and then to the full court, claiming that the order subjected the jurors to an unwarranted risk to their

As a result of the order, photographs of five of the seven female jurors were provided to defense counsel,[13] and were included in an array of nineteen photographs that was shown to the defendant's brother. He did not recognize anyone depicted in the photographs. Notwithstanding this failure, the defendant renewed his motion for a judicially supervised voir dire of the female jurors. The judge denied the motion. The judge noted that the claim was not juror exposure to extraneous information, see Commonwealth v. Guisti, 434 Mass. 245, 251 (2001), but rather possible juror bias based on an undisclosed connection to the prosecutor. The judge concluded, based on all the circumstances, that the defendant had "failed to make a reasonable or colorable showing that there was a possible juror bias that would warrant further inquiry." We agree with the Appeals Court that the judge did not abuse his discretion in denying the renewed motion.

Conclusion. We affirm the defendant's convictions of armed assault with intent to murder and unlawful possession of a firearm. We remand the case to the Superior Court with instructions that the judge vacate the sentence, as revised by the Appellate Division of the Superior Court, of one of the two

safety. The judge's order was affirmed. Commonwealth v. Richardson, 454 Mass. 1005 (2009).

[13] The other two female jurors, according to their juror questionnaires, were fifty-six and sixty-five years of age.

sentencing enhancement counts under G. L. c. 269, §§ 10 (d) and 10G (a), leaving the sentence on the other count in effect.

So ordered.