JOHNSON, COMMONWEALTH vs., 102 Mass. App. Ct. 195

 
 COMMONWEALTH vs. MAURICE JOHNSON.

102 Mass. App. Ct. 195
 September 8, 2022 - January 19, 2023

Court Below: Superior Court, Hampden County
Present: Meade, Milkey, & Massing, JJ.

 

No. 21-P-769.

Firearms. Armed Assault with Intent to Murder. Assault and Battery. Evidence, Hearsay, Past recollection recorded, Identification, Authentication, Opinion, Argument by prosecutor. Practice, Criminal, Hearsay, Argument by prosecutor, Duplicative punishment, Lesser included offense, Sentence. Identification. Witness, Police officer.

At a criminal trial, the Superior Court judge properly admitted a witness's prior identification of the defendant under the hearsay exceptions for past recollection recorded and prior extrajudicial identification evidence, where the witness had insufficient memory to testify fully and accurately and was subject to cross-examination. [198-200]

A Superior Court judge did not err in admitting electronic communications in evidence at a criminal trial, where the confirming circumstances regarding their authenticity were sufficient for the jury to determine, by a preponderance of the evidence, that the defendant had written them to the victim. [200-201]

At a criminal trial, although a police officer's testimony that the police had arrested "the right individuals" was improper opinion evidence, it did not create a substantial risk of a miscarriage of justice, where the evidence of the defendant's guilt was overwhelming, and where the officer's opinion was implicit in his decision to move forward with the investigation. [202-203]

A criminal defendant's claims that various remarks in the prosecutor's closing argument at trial were improper, even considered collectively, did not give rise to prejudicial error or any error creating a substantial risk of a miscarriage of justice. [203-205]

A criminal defendant's convictions of and sentences for unlawful possession of a firearm, in violation of G. L. c. 269, § 10 (a), and unlawful possession of a firearm, rifle, or shotgun during the commission of a felony, in violation of G. L. c. 265, § 18B, were not duplicative, where even if the former were considered a lesser included offense of the latter, the Legislature intended the latter to impose more severe, additional punishment commensurate with the additional danger created by possessing a firearm during the commission of a serious crime. [206-209]

A criminal defendant's sentences for unlawful possession of a firearm as a prior offender, under G. L. c. 269, § 10G (a), and unlawful possession of a loaded firearm, under G. L. c. 269, § 10 (n), did not improperly subject him to two 

 Page 196 

sentencing enhancements for a single violation of G. L. c. 269, § 10 (a), where § 10 (n) did not operate as a second sentencing enhancement, but mandated two consecutive sentences. [209-210]

Indictments found and returned in the Superior Court Department on February 27, 2019.

 The cases were tried before Jane E. Mulqueen, J.

 Christopher DeMayo for the defendant.

 John A. Wendel, Assistant District Attorney (William T. Joyce, Assistant District Attorney, also present) for the Commonwealth.

 MASSING, J. The defendant, Maurice Johnson, was captured on video surveillance footage shooting Dewayne Thomas (victim) in broad daylight on a residential street in Springfield. As the victim ran away up the street, a woman emerged from the passenger's side of the car the victim had been leaning against. The woman was the defendant's ex-girlfriend, Renae Fraser. The defendant could not be identified from the surveillance footage alone, but three days later, both the victim and Fraser came forward to the police and, in videotaped interviews, identified him. After a jury trial, where the victim and Fraser were far less cooperative, the defendant was convicted of numerous crimes. [Note 1]

 Many of the defendant's arguments on appeal concern the evidence the Commonwealth used to compensate for the victim's and Fraser's recalcitrance at trial. The defendant claims that Fraser's videotaped interview, incriminating electronic communications the defendant sent to the victim prior to the shooting, and certain statements of the lead police investigator should not have been admitted. He also challenges several aspects of the prosecutor's closing argument. Finally, he contends that his convictions of and sentences for unlawful possession of a firearm, unlawful possession of a loaded firearm, and possession of a firearm, rifle, or shotgun during the commission of a felony are duplicative. We affirm. [Note 2]

 Background. We summarize the evidence, reserving some details for later discussion. One afternoon in August 2018, the 

 Page 197 

victim and Fraser, who were seeing each other at the time, were together at a laundromat in Springfield washing clothes. Fraser pointed out a man sitting in a car outside the laundromat holding his cell phone towards them and taking pictures or videotaping. Fraser, who had dated the defendant a few years earlier, recognized the man as the defendant's friend, Davis Charles.

 On the same day, the victim received messages via the Facebook Messenger application on his cell phone from someone with the username "Dollaz." The sender identified himself as "Mo" and told the victim to come see him at the "Motorcycle Building" on State Street because "I gotta holla at u." Mo accused the victim of "fukkin wit Renae," to whom Mo referred as "my girl." Mo added, "We gotta problem now," and directed the victim to "pull up" at "837 State Street." The victim thought the messages were "funny" at the time and went about his day.

 After the victim and Fraser did some more errands, the victim was driving his car down a residential street when he decided to pull over to talk with a friend he saw standing on the sidewalk. The victim left the car; Fraser remained in the front passenger's seat waiting for him. The victim returned to his car and was leaning against it using his cell phone when two men approached on foot. The victim recognized one of them as the man who had been taking pictures or videotaping him and Renae at the laundromat. The other man stepped off the sidewalk, said, "What's up," and started shooting at the victim, who turned to run away. One bullet pierced the victim's left arm from back to front, breaking a bone. The victim was able to run to his grandmother's house, which was nearby, and was taken to the hospital for treatment. 

 Fraser, still inside the vehicle, saw the victim run past her. She got out of the car and saw the defendant and Charles standing nearby. When the defendant entered the driver's side of the victim's car, Fraser reentered the passenger's side and tried to take the keys out of the ignition. Despite Fraser's efforts to stop him, the defendant was able to drive away, leaving Fraser and Charles behind. The Springfield police recovered the victim's vehicle the next day, parked across the street from the former Indian Motorcycle Building at 837 State Street, the address given in the Facebook Messenger communications. 

 Page 198 

 Three days after the shooting, the victim and Fraser went to the Springfield police station. There, Detective Jose Canini administered to the victim two photographic arrays. The victim selected the defendant's photograph with one hundred percent certainty and wrote on it, "This is the guy that shot me." During his ensuing interview with the lead investigator, Detective James Crogan, the victim confirmed his identification. During Fraser's interview, conducted by Detective Joseph Brodeur, she also identified the defendant as the shooter, and Charles as another person involved. The police arrested the defendant at Charles's apartment located at 837 State Street.

 Discussion. 1. Evidentiary issues. a. Past recollection recorded and prior identification. At trial, Fraser testified about going to the laundromat with the victim, seeing Charles photograph or videotape them with his cell phone, remaining in the passenger's seat of the victim's car when the victim got out to speak with some friends, and then seeing the victim run past the car. However, Fraser said she could not remember hearing shots fired, who fired them, or anything else that happened. Based on Fraser's claimed lack of memory, the Commonwealth sought to introduce her videotaped interview under the hearsay exception for past recollection recorded. See Mass. G. Evid. § 803(5) (2022). Before ruling on the admissibility of the interview, the trial judge permitted the parties to conduct voir dire examination of Fraser, as well as Crogan and Brodeur. Based on the voir dire testimony, the trial judge found that the videotaped interview met the criteria for past recollection recorded. [Note 3]

 "A recording may be admissible under the hearsay exception 

 Page 199 

for past recollection recorded if '(i) the witness has insufficient memory to testify fully and accurately, (ii) the witness had firsthand knowledge of the facts recorded, (iii) the witness can testify that the recorded statement was truthful when made, and (iv) the witness made or adopted the recorded statement when the events were fresh in the witness's memory.'" Commonwealth v. Da Lin Huang, 489 Mass. 162, 179 (2022), quoting Mass. G. Evid. § 803(5) (2021). The defendant challenges only the judge's conclusion that the first foundational element of this test was met, arguing that Fraser did in fact have sufficient recollection to testify fully and accurately, but that she was simply unwilling to do so.

 The judge did not err in finding that Fraser's memory was insufficient. At trial, Fraser repeatedly professed a lack of memory, stating variously, "I don't remember," "I don't really remember," "I can't remember exactly," "Everything was a blur," and "It happened very fast." She was thus able to testify only partially, but not fully or accurately, about the shooting. See Commonwealth v. Nolan, 427 Mass. 541, 544 (1998) ("Although she testified on the stand to certain events of importance to the prosecutor's case, she confessed to a lack of recollection of other details. . . . A witness's inability to remember details of an event described in a statement can justify the discretionary admission of the statement if it otherwise meets the test for admissibility"). 

 It is not the case that Fraser's "memory was fully 'revivable,' [but] inconsistent with her prior statement." Commonwealth v. Vuthy Seng, 456 Mass. 490, 501 (2010), quoting Nolan, 427 Mass. at 543. Fraser insisted she could not remember the details of the shooting. Even if she was unwilling, rather than unable, to recall the details, see note 3, supra, the exception still applies. Fraser was able to, and did, "assert that the record correctly represented [her] knowledge and recollection at the time of making" (emphasis added). Commonwealth v. Greene, 9 Mass. App. Ct. 688, 690 (1980), quoting 3 Wigmore, Evidence § 746(2) (Chadbourn rev. ed. 1970). "It is exactly where, as here, the witness does not have a present memory and hence is currently unable or unwilling to adopt her prior statement as true, that prior written statements are admissible for their full probative value, in the discretion of the trial judge, as past recollection recorded." Greene, supra at 690-691. The judge did not abuse her discretion 

 Page 200 

in admitting the videotaped interview of Fraser as past recollection recorded.

 In addition, the most damaging aspect of the interview, from the defendant's point of view, was Fraser's identification of him as the assailant. As Fraser was subject to cross-examination, her statements naming the defendant as the culprit were independently admissible under the hearsay exception for extrajudicial identifications by a witness. See Commonwealth v. Cong Duc Le, 444 Mass. 431, 435-441 (2005); Mass. G. Evid. § 801(d)(1)(C). [Note 4] Prior identification evidence is admissible substantively to address situations, as here, when subsequent events "may later cause a witness to claim an inability to make an identification at trial, or to disclaim ever having had any basis for the prior identifications." Cong Duc Le, supra at 441. Fraser's identification of the defendant was properly admitted under the hearsay exception for prior identification evidence as well as for past recollection recorded.

 b. Authenticity of electronic communications. The Commonwealth asserted that the defendant wrote the Facebook messages the victim received from "Mo," using the "Dollaz" account, and that they established a motive for the shooting: the defendant had a "problem" with the victim and wanted to confront him because of his involvement with Fraser. The defendant argues that the judge erred in admitting the messages because they were not authenticated.

 "Authentication is a preliminary determination of fact, which a judge must make prior to admitting evidence." Commonwealth v. Sargent, 98 Mass. App. Ct. 27, 30 n.4 (2020). See Mass. G. Evid. §§ 104(b), 901(a). The judge performs "a gatekeeper role" to determine whether the jury "could find that the item in question is what its proponent claims it to be." Commonwealth v. Meola, 95 Mass. App. Ct. 303, 308 (2019). "In the case of a digital communication that is relevant only if authored by the defendant, a judge is required to determine whether there is sufficient evidence to persuade a reasonable trier of fact that it is more likely than not that the defendant was the author of the communication." Id. See Commonwealth v. Oppenheim, 86 Mass. App. Ct. 359, 366-367 (2014) (preponderance of evidence standard governs determination 

 Page 201 

of authorship). Evidence that the communication came from an account in the name of the purported author is not enough, see Commonwealth v. Purdy, 459 Mass. 442, 450 (2011); Meola, supra at 314-315 -- nor is it required, see Oppenheim, supra at 361, 368. In assessing the authenticity of a communication, the judge may look to "confirming circumstances" that would allow a reasonable jury to conclude that the defendant was the source. Purdy, supra at 448-449, citing Commonwealth v. Hartford, 346 Mass. 482, 488 (1963). See Meola, supra at 311; Mass. G. Evid. § 901(b)(11). 

 The confirming circumstances were many. A photograph of the defendant associated with the "Dollaz" Facebook Messenger account was entered in evidence. The author of the messages identified himself as "Mo" and referred to Fraser, the defendant's ex-girlfriend, as "my girl." The author knew that the victim was seeing Fraser; his friend and accomplice, Charles, had photographed the victim and Fraser doing laundry together that same day. The author provided the victim with an invitation to "pull up" at a specific address: the location of the former Indian Motorcycle Building in Springfield, now an apartment building. The victim's car was found parked across the street from the building the day after the shooting, and the defendant was arrested in Charles's apartment there a few days later. See Meola, 95 Mass. App. Ct. at 314 (sufficient confirming circumstances where communication came from Facebook account in defendant's name, with profile picture of his daughter, and revealed intimate and personal details known to defendant and few others); Oppenheim, 86 Mass. App. Ct. at 368 (instant message matched defendant's tone and referred to details of previous conversations between defendant and recipient). Because the confirming circumstances were sufficient for the jury to determine, by a preponderance of the evidence, that the defendant wrote the Facebook Messenger communications to the victim, the judge did not err in admitting them in evidence. [Note 5]

 Page 202 

 c. Officer's opinion of defendant's guilt. During direct examination, the Commonwealth asked Detective Crogan several questions regarding why the police investigation quickly focused on the defendant and Charles to the exclusion of other suspects. Crogan replied, without objection, that evidence discovered in the police investigation was consistent with the victim's and Fraser's accounts, giving the police confidence that they were investigating "the right individuals." The defendant argues for the first time on appeal that Crogan's testimony amounted to an improper opinion as to his guilt. See Commonwealth v. Hamilton, 459 Mass. 422, 439 (2011); Commonwealth v. Hesketh, 386 Mass. 153, 161-162 (1982). Police witnesses may, with caution, properly discuss steps taken in an investigation to corroborate witnesses' accounts. See Commonwealth v. Ahart, 464 Mass. 437, 442-443 (2013). Cf. Commonwealth v. Rosario, 430 Mass. 505, 509-510 (1999). Crogan's statement that the police had arrested "the right individuals," however, crossed the line into improper opinion evidence. [Note 6] Because the defendant failed to preserve the issue, we review the admission of Crogan's testimony only to determine whether it created a substantial risk of a miscarriage of justice. See Commonwealth v. McCoy, 456 Mass. 838, 850 (2010).

 "The substantial risk standard requires us to determine 'if we have a serious doubt whether the result of the trial might have been different had the error not been made.'" Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005), quoting Commonwealth v. LeFave, 430 Mass. 169, 174 (1999). We entertain no such doubt. The evidence of the defendant's guilt was overwhelming. The Commonwealth produced a video recording of the shooting, two eyewitness identifications -- one by a witness who knew the defendant intimately -- and communications 

 Page 203 

from the defendant dramatically demonstrating his motive and intent and leading the police to his whereabouts. Moreover, "[t]he detective's opinion was implicit in his decision to move forward with the investigation." Hamilton, 459 Mass. at 439. See Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 389 (2017) ("the prejudice flowing from this opinion would be relatively modest given what must have been obvious to the jury"). "In the circumstances, we conclude that the improper testimony would not have materially influenced the verdict." Hamilton, supra. 

 2. Prosecutor's closing argument. The defendant contends that various remarks in the Commonwealth's closing argument were improper. The defendant timely objected to all but one of the challenged arguments. We consider the prosecutor's remarks "in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial." Commonwealth v. Martinez, 476 Mass. 186, 200 (2017), quoting Commonwealth v. Viriyahiranpaiboon, 412 Mass. 224, 231 (1992).

 The defendant takes issue with the prosecutor's statement, "These people, they have to go home to these neighborhoods. They're scared." The defendant asserts that this argument had no basis in the evidence and suggested that the witnesses, including the victim and Fraser, were reluctant to identify the defendant because they feared retaliation. Prosecutors of course may not misstate the facts, but they may argue forcefully for a conviction based on the evidence and reasonable inferences favorable to the Commonwealth's case. See Martinez, 476 Mass. at 200; Commonwealth v. Donovan, 422 Mass. 349, 357 (1996); Commonwealth v. Kozec, 399 Mass. 514, 516 (1987). 

 In context, the prosecutor's challenged remark referred to just one peripheral witness and was grounded in the evidence. Crogan, who responded to the crime scene, testified that the police were able to get "very, very little information" from the residents of the neighborhood where the shooting occurred because they "just would not talk." [Note 7] Sonya Daley, who came forward later and was interviewed at the police station with her attorney present, testified that her reaction to the shooting was to "duck and run." On the witness stand, she was "so nervous" that she had difficulty speaking. It was in this context that the prosecutor argued, "[L]et's look at the testimony of Sonya Daley. She 

 Page 204 

was there. She saw what had happened. She wouldn't even tell the police what she really saw until she sat down with her lawyer with the police. These people, they have to go home to these neighborhoods. They're scared." The prosecutor went on to summarize Daley's testimony.

 The defendant contends that the prosecutor's argument here was similar to that disapproved in Commonwealth v. Silva-Santiago, 453 Mass. 782, 805-810 (2009), in which two companions of the murder victim, given an opportunity to identify the defendant at the crime scene, failed to do so. The prosecutor argued, with no basis in the evidence, that the two witnesses recognized the defendant but refrained from identifying him because they were "too scared." Id. at 806. Unlike in Silva-Santiago, the evidence here supported the prosecutor's argument. Daley's actions during the shooting, her delay in coming forward, and her demeanor on the stand permitted the inference that she was in fact scared. The prosecutor's reference to "these people" was a poor choice of words, but if the jury interpreted the comment more broadly than intended, it was unlikely they would have understood the prosecutor to be referring to the victim or Fraser. In context, it is clear that the prosecutor was referring to Daley and to the other neighbors who declined to speak with the police.

 The defendant argues for the first time on appeal that the prosecutor impermissibly vouched for the victim's credibility during her closing argument when she stated, "And we know that it was that defendant, because again, four days later when [the victim] had nothing to do but tell the truth -- he's still in pain with a broken arm, shot, through and through gunshot wound. He says . . . 'This is the guy that shot me.'" We review this unpreserved claim to determine whether any error created a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 17 (1999).

 The prosecutor's argument was a proper response to defense counsel's summation, in which he argued at length that the victim's prior identification was unreliable and that he was being truthful on the witness stand when he refused to confirm it. A prosecutor may comment on "a witness's demeanor, motive for testifying, and believability, provided that such remarks are based on the evidence, or fair inferences drawn from it, and are not based on the prosecutor's personal beliefs." Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999). Moreover, "[w]here, as here, defense counsel in closing argument challenges the 

 Page 205 

credibility of the [victim], it is proper for the prosecutor to invite the jury to consider whether the [victim] had a motive to lie and to identify evidence that demonstrates that the [victim's] testimony is reliable." Commonwealth v. Dirgo, 474 Mass. 1012, 1014 (2016). See Mass. G. Evid. § 1113 & note (discussing improper vouching). The prosecutor did not inject her personal belief or imply that she had any special knowledge outside the evidence to verify the victim's prior identification. See Commonwealth v. Grier, 490 Mass. 455, 470-471 (2022).

 The defendant's remaining closing argument claims do not require extended discussion. The prosecutor's argument that the defendant got "very close" to the victim and was "right up on top of him" before shooting him "at close range" was a reasonable description of the video surveillance footage. Likewise, the prosecutor's summary of Fraser's recorded interview -- including Fraser's statement that "it was obvious" that the defendant shot the victim -- was supported by the evidence. [Note 8] In any event, the deliberating jurors were provided with the exhibits, which they could consider in light of the judge's instructions that the arguments of the attorneys were not evidence and that the jurors were to "follow their own recollection" of the evidence. 

 The defendant's claim of improper closing argument is not advanced by the fact that the prosecutor argued, without evidentiary support, that the police did not obtain deoxyribonucleic acid evidence because "[t]he technology doesn't exist." In response to the defendant's objection, the judge promptly supplied a specifically tailored curative instruction, informing the jury that this argument was "a misstatement by the Commonwealth" and directing them to disregard it. Even considering the defendant's closing argument claims collectively, see Commonwealth v. Loguidice, 420 Mass. 453, 454 (1995), there was no prejudicial error or any error creating a substantial risk of a miscarriage of justice.

 Page 206 

 3. Claims of duplicative punishments. a. Defendant's sentences for firearm offenses. The jury found the defendant guilty of the crime of unlawful possession of a firearm in violation of G. L. c. 269, § 10 (a). At the subsequent jury-waived trial under the so-called armed career criminal act, G. L. c. 269, § 10G, the judge found that the defendant had one prior conviction for a "serious drug offense." See G. L. c. 269, § 10G (e) (defining term "serious drug offense"). [Note 9] Accordingly, the judge sentenced the defendant to an enhanced State prison term of from ten to twelve years for the § 10 (a) conviction. See G. L. c. 269, § 10G (a) ("Whoever, having been previously convicted of a violent crime or of a serious drug offense, both as defined herein, violates the provisions of paragraph [a], [c] or [h] of [§] 10 shall be punished by imprisonment in the state prison for not less than three years nor more than [fifteen] years"); Commonwealth v. Richardson, 469 Mass. 248, 252 (2014).

 The § 10 (a) conviction also formed the foundation for the defendant's conviction of unlawful possession of a loaded firearm in violation of G. L. c. 269, § 10 (n). For this crime, the judge sentenced the defendant to a two and one-half year house of correction term, to be served from and after the ten to twelve year sentence for unlawful possession of a firearm as a prior offender. See G. L. c. 269, § 10 (n) ("Whoever violates paragraph [a] or paragraph [c] [of G. L. c. 269, § 10], by means of a loaded firearm, . . . shall be further punished by imprisonment in the house of correction for not more than [two and one-half] years, which sentence shall begin from and after the expiration of the sentence for the violation of paragraph [a] or paragraph [c]").

 In addition, the jury found the defendant guilty of possession of a firearm, rifle, or shotgun during the commission of a felony, in violation of G. L. c. 265, § 18B. The § 18B indictment did not specify the underlying felony. The judge instructed the jury that the charges of (1) armed assault with intent to murder, (2) armed carjacking, and (3) assault and battery by discharge of a firearm all qualified as felonies. The jury convicted the defendant of the first and third of these felonies as well as of possession of a firearm, 

 Page 207 

rifle, or shotgun during their commission. The judge sentenced the defendant to a State prison term of from four to five years for the § 18B conviction, to be served concurrently with the sentence for unlawful possession of a firearm as a prior offender. [Note 10]

 The defendant takes issue with several aspects of his sentence. First, he argues that the § 10 (a) conviction is a lesser included offense of the § 18B conviction and must be vacated as duplicative. It follows, he contends, that because § 10 (n) is not a freestanding crime, see Commonwealth v. Taylor, 486 Mass. 469, 474-475 (2020); Commonwealth v. Brown, 479 Mass. 600, 604 (2018), if the § 10 (a) conviction is vacated, the § 10 (n) conviction will lack a foundation and must also fall. Finally, he argues that the single § 10 (a) conviction cannot be the basis for two sentencing enhancements, § 10 (n) and § 10G (a). Because the defendant raises these issues for the first time on appeal, we review under the substantial risk of a miscarriage of justice standard. See Commonwealth v. Kelly, 470 Mass. 682, 699 (2015); Commonwealth v. Thomas, 401 Mass. 109, 119 (1987). See also Commonwealth v. Constantino, 443 Mass. 521, 526-527 (2005) (convicting defendant twice for same offense gave rise to substantial risk of miscarriage of justice).

 b. Lesser included offense. The defendant argues that under the same elements test of Morey v. Commonwealth, 108 Mass. 433, 434 (1871), later adopted by the United States Supreme Court, see Blockburger v. United States, 284 U.S. 299, 304 (1932), because all of the elements present in § 10 (a) are included in § 18B, his conviction for the former must be vacated as duplicative of his conviction for the latter. The Commonwealth responds that § 10 (a) is not a lesser included offense because it requires unlawful possession of a firearm -- in this case, without a license, see G. L. c. 269, § 10 (a) (2)-(3) -- whereas the Commonwealth can obtain a conviction under § 18B even if the defendant legally possessed the firearm.

 The Commonwealth's argument, however, potentially runs afoul of the well-established rules concerning the burden of proof under § 10 (a), whereby the absence of a license is not considered 

 Page 208 

to be an element of the crime, but rather an affirmative defense. [Note 11] See Commonwealth v. Gouse, 461 Mass. 787, 802-803 & n.17 (2012), and cases cited therein. Our case law does not address the treatment of affirmative defenses in the Morey same elements analysis. The Federal circuit courts that have addressed the issue in the context of the Blockburger test are split on the issue. See United States v. Davenport, 519 F.3d 940, 945 (9th Cir. 2008) (affirmative defenses not considered elements for purpose of Blockburger analysis); Aparicio v. Artuz, 269 F.3d 78, 98 (2d Cir. 2001) (same); United States v. Franchi-Forlando, 838 F.2d 585, 591 (1st Cir. 1988) (affirmative defenses properly considered under Blockburger test). The United States Court of Appeals for the First Circuit, in permitting the consideration of affirmative defenses, observed that the Blockburger decision itself "found a difference between two similar statutes based on the fact that one of them contained an affirmative defense." Franchi-Forlando, supra. Ultimately, we need not resolve this issue.

 Even if § 10 (a) were considered a lesser included offense of § 18B for the purpose of the Morey-Blockburger test, we would still conclude that the Legislature intended separate punishments for the two crimes. The same elements test is a rule of statutory construction. See Commonwealth v. Rodriguez, 476 Mass. 367, 371 (2017); Commonwealth v. Cabrera, 449 Mass. 825, 827 (2007). The Legislature is free to impose multiple punishments, so long as the intent to do so is manifest. See Commonwealth v. Alvarez, 413 Mass. 224, 232 (1992), overruled in part on other grounds by Commonwealth v. Kelly, 484 Mass. 53, 62 n.7 (2020) ("Where the Legislature has specifically authorized cumulative punishment under two statutes, even if the two statutes proscribe the same conduct under the Morey test, a court's job of statutory construction is terminated, and the intent of the Legislature is to be enforced").

 We are confident that the Legislature intended for separate punishments for the unlawful possession of a firearm and its use in the commission of a felony. The language of § 18B itself states that punishment thereunder shall be "in addition to the penalty" for the underlying felony, G. L. c. 265, § 18B, even if the 

 Page 209 

underlying felony includes the use of a firearm as an element. [Note 12] See Commonwealth v. Thomas, 484 Mass. 1024, 1025-1026 (2020), overruled in part on other grounds by Commonwealth v. Rossetti, 489 Mass. 589, 613-614 (2022). The Legislature's intent in § 10 (a) was to address "[t]he menace of dangerousness posed to individuals and communities by the possession of illegal firearms." Vega v. Commonwealth, 490 Mass. 226, 233 (2022). The Legislature's intent in § 18B was to impose more severe, additional punishment commensurate with the additional danger created by possessing a firearm (in the colloquial sense) during the commission of a serious crime. 

 The defendant argues that because § 10 (a) is itself a felony, the Commonwealth could charge a defendant under § 18B for possession of a firearm during the unlawful possession of a firearm, a patently absurd result. We agree that the Legislature did not intend to authorize charging a defendant in that manner. But that is not what happened here. The defendant was convicted under G. L. c. 265, § 18B, for possessing a firearm while he committed two felonies against a person. Moreover, his unlawful possession of a firearm under G. L. c. 269, § 10 (a), was a distinct offense subject to distinct punishment under a different regulatory scheme enacted for other purposes. See Commonwealth v. Porro, 458 Mass. 526, 534 (2010) (noting relevance, in application of Morey test, of "Legislature's statutory grouping" of offenses); Commonwealth v. Crocker, 384 Mass. 353, 361 (1981) (for purposes of discerning legislative intent, placement of crimes in different chapters of General Laws "further[s] distinct legislative policies"). The two sentences and convictions are not duplicative. [Note 13]

 c. Multiple sentencing enhancements. The defendant argues that his sentences for unlawful possession of a firearm as a prior offender under § 10G (a) and for unlawful possession of a loaded firearm under § 10 (n) cannot both stand because they amount to two sentencing enhancements for a single violation of § 10 (a). 

 Page 210 

See Richardson, 469 Mass. at 254 ("we will not presume, absent a clear statement, that the Legislature intended to impose multiple sentencing enhancements to a single underlying offense"). We disagree. The defendant was not subject to two sentencing enhancements, and he was sentenced in accordance with the Legislature's intent.

 The defendant's sentence for unlawful possession as a prior offender under § 10G (a) was a traditional sentencing enhancement. That is, because of his prior conviction of one serious drug offense, his violation of § 10 (a), normally punishable by a maximum State prison sentence of five years, was instead punishable by a term of up to fifteen years. See G. L. c. 269, §§ 10 (a), 10G (a); Richardson, 469 Mass. at 252. His conviction under G. L. c. 269, § 10 (n), however, did not operate as a second sentence enhancement. A violation of § 10 (n), while not a freestanding crime, "deviates from traditional sentencing enhancements." Taylor, 486 Mass. at 476. The statute does not increase the punishment for unlawful possession of a firearm based on a prior conviction; "instead of leading to a single, longer sentence, the statute mandates two consecutive sentences." Id. See G. L. c. 269, § 10 (n) (violating § 10 [a] "by means of a loaded firearm . . . shall be further punished" by house of correction sentence, which "shall begin from and after the expiration of the sentence for the violation of paragraph [a]"). 

 Thus, while the defendant's punishment for unlawful possession of a firearm under § 10 (a) was "enhanced" under § 10G (a) to a term of from ten to twelve years, he also received, in accordance with § 10 (n), "further" punishment for unlawful possession of a loaded firearm: a "from and after" house of correction sentence of two and one-half years. The defendant was properly sentenced in accordance with the legislative scheme.

Judgments affirmed.

FOOTNOTES
[Note 1] The defendant was found guilty of armed assault with intent to murder, G. L. c. 265, § 18 (b); assault and battery by discharging a firearm, G. L. c. 265, § 15E; possession of a firearm, rifle, or shotgun during the commission of a felony, G. L. c. 265, § 18B; unlawful possession of a loaded firearm, G. L. c. 269, § 10 (n); and unlawful possession of a firearm under G. L. c. 269, § 10 (a), as a prior offender with one predicate offense, G. L. c. 269, § 10G (a). The jury acquitted the defendant of armed carjacking, G. L. c. 265, § 21A. 

[Note 2] The defendant was at liberty on probation when he committed these crimes. His arrest for the shooting prompted the revocation of his probation, which the defendant challenges in a separate appeal. In a separate memorandum and order issued today, we dismiss that appeal. 

[Note 3] "So I do find . . . under past recollection recorded . . . that the witness has an insufficient memory to testify fully and accurately, that the witness had firsthand information of the facts that have been recorded in the prior statement, that the witness can testify that the recorded statement was truthful when made -- in fact, she did so testify -- and that the witness made or adopted the recordings -- recorded statement when the events were fresh in the witness's memory." 

 The judge also found that Fraser was "feigning this memory loss" and that the videotape was therefore also admissible substantively. See Commonwealth v. Sineiro, 432 Mass. 735, 741-742 (2000); Mass. G. Evid. § 801(d)(1)(A) & note. To date, prior inconsistent statements admitted for their truth have been limited to statements under oath: grand jury testimony, testimony from a prior trial, testimony at a probable cause hearing, and affidavits filed in connection with an application for an abuse prevention order under G. L. c. 209A. See Commonwealth v. Belmer, 78 Mass. App. Ct. 62, 64-65 (2010). Because we conclude that Fraser's unsworn statements in the videotape were admissible on other grounds, we need not consider this issue further. 

[Note 4] For the prior identification exception to the hearsay rule, the cross-examination requirement is satisfied if the witness takes the stand and is permitted to answer questions, Cong Duc Le, 444 Mass. at 436-438, 442, even if the witness "claims not to remember or disavows the prior identification," id. at 440. 

[Note 5] Contrary to the argument in the defendant's brief, the resolution of this issue is not remotely "governed" by Commonwealth v. Salyer, 84 Mass. App. Ct. 346 (2013). In Salyer, harassing messages received by the alleged victim over a social media platform were admitted de bene based on the Commonwealth's representation that later testimony would link the messages to the defendant. Id. at 350. We held that defense counsel provided ineffective assistance by failing to move to strike unauthenticated messages when the foundational evidence never materialized. Id. at 355-356. 

[Note 6] We are not persuaded by the Commonwealth's argument that Crogan's testimony was a proper response to a suggestion by the defense that the police investigation prematurely focused on the defendant to the exclusion of other suspects. The day before Crogan testified, the defendant requested a jury instruction pursuant to Commonwealth v. Bowden, 379 Mass. 472 (1980), but the request was based on the Commonwealth's failure to obtain deoxyribonucleic acid evidence. The defense never argued that the investigation was flawed for failure to consider other suspects, and even if it had, the "right individuals" testimony would have gone too far. See Commonwealth v. Avila, 454 Mass. 744, 756 n.12 (2009) (stressing need for caution in permitting Commonwealth to rebut Bowden defense, as response may result in "impermissible expression of opinion of the defendant's guilt"). 

[Note 7] The defendant objected when Crogan said that there was a "no snitching atmosphere" at the scene. The judge heard the parties at sidebar but never expressly ruled on the objection. 

[Note 8] Fraser was asked during her interview whether she saw a gun in the defendant's hand. She responded, "That's not what I was looking for, but it's obvious." When the detective suggested that either the defendant or Charles could have had a gun, Fraser said, "Well, both hands were up and facing the direction that he was, that [the victim] . . ." (The surveillance footage shows only one man, the defendant, with both hands up in a shooting stance). The prosecutor summarized the above exchange as follows: "[The detective] asked her, you know, 'Who was shooting? Did you see who was shooting?' And she responded it was obvious. It was obvious that it was [the defendant] who was -- who shot [the victim]. He had his hands up." 

[Note 9] The term "armed career criminal" is reserved for offenders with three qualifying prior convictions. See Commonwealth v. Richardson, 469 Mass. 248, 252 n.8 (2014); Commonwealth v. Anderson, 461 Mass. 616, 626 n.10, cert. denied, 568 U.S. 946 (2012). An offender with one prior conviction of a violent crime is a "prior violent offender." Richardson, supra. We refer to the defendant, with one prior conviction of a serious drug offense, as a "prior offender." 

[Note 10] The judge also imposed State prison sentences of from ten to twelve years with respect to the convictions of armed assault and assault and battery, to be served concurrently with the sentences for the § 18B conviction and for unlawful possession as a prior offender. 

[Note 11] The Commonwealth is not required to prove the absence of a license as an element to obtain a conviction under § 10 (a), see Gouse, 461 Mass. at 802-803 & n.17; Commonwealth v. Young, 453 Mass. 707, 713 n.9 (2009), but if the defendant comes forward with evidence of licensure, the Commonwealth carries the ultimate burden of proving its absence beyond a reasonable doubt. Gouse, supra at 802. 

[Note 12] A prior version of § 18B stated, "This section shall not apply in the case of any felony in which the offense consists in whole or in part of using a dangerous weapon." G. L. c. 265, § 18B, as amended by St. 1984, c. 189, § 162. The Legislature removed this language when it amended the statute in 1998. See St. 1998, c. 180, § 56; Commonwealth v. Thomas, 484 Mass. 1024, 1026 & n.7 (2020). 

[Note 13] Deciding as we do that the defendant's § 10 (a) conviction survives, the foundation for his conviction and punishment under G. L. c. 269, § 10 (n), remains in place. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.